### CURTAIN SUPPLY CO. v. NORTH JERSEY ST. RY. CO.

(Circuit Court, D. New Jersey. May 9, 1905.)

1. PATENTS—INFRINGEMENT—SHADE-HOLDING DEVICE.

The Forsyth patent, No. 559,446, for a shade-holding device for use chiefly on the shades in car windows, discloses invention, and is valid, but, in view of the prior art, is limited to the self-righting feature which is its essential element, by means of which the bottom of the shade, when pulled or pushed out of the horizontal, will automatically reassume such position. As so construed, held not infringed by the device of the Hoyt patent, No. 676,557.

2. SAME.

The Paterson patent, No. 659,315, for a shade fixture, claims 1, 2, and 3, construed, and, as limited by the prior art, held not infringed.

In Equity. Suit for infringement of patents. On final hearing.

C. C. Linthicum and L. S. Bacon, for complainant.

J. Edgar Bull and Worth Osgood, for defendant.

GRAY, Circuit Judge. The bill filed in this case charges the infringement of claims 1 and 2 of letters patent No. 559,446, dated May 5, 1896, and issued to Henry H. Forsyth, and Henry H. Forsyth, Jr., for shade-holding device, and claims 1, 2 and 3 of letters patent No. 659,315, issued October 9, 1900, to James W. Paterson, for shade fixture. The defendant is sued as the user of the patented

device, the same having been manufactured by the National Lock Washer Company, of Newark, New Jersey, which company, by stipulation, is defending the suit. Complainant's title to both patents is also admitted by stipulation, as well as the use of the alleged infringing device and the corporate character of the parties complainant and defendant. The complainant thus describes the device of the Forsyth patent:

"This patent (which will be referred to as the 'Forsyth patent') relates to a device for holding a window shade or curtain in any desired position of adjustment, within the limits of the window frame, and the device is most frequently employed on the shades or curtains of railroad and street railway cars. These shades are usually of heavier cloth than the ordinary shade cloth which is used in houses, and as the cars are subjected to vibrations and occillations of a more or less violent character, and as the curtains or shades are sometimes drawn down when the windows are open, the shade-holding device must be of such character as to hold the curtain against the tendency of these forces to disturb its position. These curtains or shades are attached at one end to a shade roller containing a spring which exerts a constant tendency to turn the roller in a direction to wind up the shade thereon, and which roller differs from the one commonly used in house curtains or shades in the fact that the holding dogs, which lock the shade roller in position when it comes to rest, are omitted.

The shade-holding device is intended to hold the lower edge of the shade at the desired elevation, against the oscillations, vibrations, and other external forces incident to the movements of the car, the force of the wind when the window is open and the curtain is lowered, and also against the constant tendency of the shade-roller spring to wind the shade upon the roller. Further, the shade-holding device must be of such character that the shade may be quickly adjusted by the passengers upon these cars.

In the following cuts (which are figures 2 and 3 of the drawings of the Forsyth patent) the construction of the Forsyth fixture and its relation to the shade and window frame, are clearly shown:

The shade stick consists of a hollow rod (11), which is enclosed within a pocket in the lower end of the shade (10), and contains two sliding rods (13), whose inner ends are provided with pinch-handles or pendants (22), and whose outer ends carry elongated heads (16), provided in their faces or vertical edges with friction tips (26). The extremities of these heads are rounded

on their outer corners, as shown in figure 2 of the patent, but may be provided with rollers (27), as shown in figure 3 of the patent. The details of construction of the heads are more clearly shown in figures 4 to 6, inclusive, of the drawings of the patent. Coiled springs (14), located within the hollow shade stick, and having a bearing thereon and upon the shanks of the heads, tend to thrust the latter out into contact with the window frame, which latter is provided with vertical grooves in which the heads move so as to hold the shade parallel to the window.

The friction tips are of such character and the springs of the fixture are so proportioned as to hold the shade in the adjusted position, and this holding function is automatically effected. To adjust the shade to a higher or a lower position, the pinch handles or pendants are provided, and by proper manipulation the shade can be raised or lowered and held in any adjusted position with the shade stick or bar parallel to the bottom of the window frame. Experience has proven, however, that this is not the universal or even the usual mode of adjusting the shade. The ordinary passenger seizes the lower edge of the shade, usually near one end, and attempts to pull it down or push it up, with the result that the shade stick is likely to be placed in a canted or oblique position, and in the attempt to restore the shade to a horizontal position, unless special provisions are made, the holding heads will escape from the grooves, and the lower edge of the curtain freed, so that it is violently rolled up by the roller spring."

Claims 1 and 2 of this patent, of which infringement is charged, are as follows:

"(1) A self-righting holding mechanism for spring-actuated shades comprising, in combination with the shade, heads carried thereby, said heads having separated bearing or contact points of diverse frictional holding power and arranged in such relation to each other that when the margin of the shade is moved from a horizontal position the bearing-point of least resistance will be engaged and the bearing-point of greater frictional power wholly or partially withdrawn from contact whereby the shade may resume its normal horizontal position, substantially as described.

(2) A self-righting holding mechanism for spring-actuated shades comprising in combination with a shade, heads carried thereby, said heads having projecting friction tips in the vertical faces thereof, and antifriction-rollers journaled in the extremities of said heads on opposite sides of the friction tips, said heads and rollers adapted to bear upon the same opposing surface whereby when the shade is moved from a horizontal position, the roller will be brought into contact with such surface and the tip wholly or partially withdrawn from contact and the shade resume its normal horizontal position when released from the moving force, substantially as described."

That the self-righting capacity of this device is the essential feature of the invention, is apparent from a brief survey of the prior art. The patentee, in his specifications, refers to only a certain portion of the prior art, which was embodied in the Hall patent of 1891. This patent shows rods slidably mounted in a pocket or tube in the lower margin of the shade, and carrying friction tips at their outer ends, adapted to traverse grooves in the jambs of the windows, and held against the back of said grooves by the outward pressure of the coiled springs actuating said rods. These friction tips, not much wider than the end of the rod, are of rubber, and are seated in a metal pocket at the end of said rods. The friction of these rubber tips on the back of the grooves, serves to hold the shade with the lower edge horizontal against the upward pull of the spring roller at the top, the shade being easily lowered or raised by pressing together the pinch handles attached to the inner ends of the spring actuated rods, thus withdrawing the friction tips from con-

tact with the back of the grooves. The degree of outward pressure on these friction tips is generally such that the shade could be raised or lowered without touching the pinch handles, by using force enough, with the hand on the bottom of the shade, to overcome the holding power of the friction tips. It was this tendency to so raise or lower the shades, without withdrawing the friction tips by pressure on the pinch handles, that caused the trouble sought to be overcome by the Forsyth patent in suit. Persons who were careless or ignorant were apt to seize one side of the bottom of the shade, through which the tube and rods passed, to force it up or down. The result generally was that only the side to which the force was applied was raised or lowered, leaving the shade in a canted position, and the tendency was for the heads and friction ends of the rods to come out of the grooves and leave the shade flapping. The Forsyth patent in suit met this difficulty by using the same spring actuated rods, securely fastened to metal heads with elongated arms slidable in the grooves, with a friction tip in the center, of rubber or other substance, calculated, when pressed against the back of the groove, to resist the upward pull of the spring roller. The extremities of the elongated metal heads were either rounded, so as to diminish friction, or provided with antifriction rollers, so adjusted with reference to the central friction tip as that the latter shall extend outwardly a little beyond the line of the bearing of said extremities, so that when the bottom of the shade is in its normally horizontal position, the metal extremities of the head or the roller tips are not quite in contact with the back of the grooves. When, however, one side of the shade is pulled down further than the other, the central friction tip on that side is measurably withdrawn from contact with the back of the groove, by the tilting of the elongated head, the antifriction roller of the upper arm coming in contact with the back of the groove, and acting as a fulcrum upon which the lower arm swings out, or nearly out, of the grooves. The position of things in the opposite groove is just the reverse. The central friction tip is withdrawn to the same extent as in the other end, but the roller tip of the lower arm of the head is in contact with the back of the groove, the upper one being displaced as described. As the metal head is fastened securely upon the spring actuated rod, there is a tendency, resulting from the pressure in the lower and upper arms of the heads on the opposite sides of the shade, to press the rods inwardly against the yielding pressure of the springs. In this position, the self-righting feature of the invention is intended to come into play, and, when everything is in proper adjustment, does come actually into play. The frictional holding tip in the center of the head being withdrawn from its contact with the back of the groove, the head slides easily on the antifriction roller tip in the lower arm of the head on one side, and on the roller tip in the upper arm of the head on the other. The head on the side pulled down rolls up on the roller tip of its topmost extremity, and the head on the opposite side tends to move downward on the roller tip of its lower extremity into normal position, with

the bottom of the shade horizontal. This is the self-righting func-tion claimed for the device in the Forsyth patent in suit.

In other devices of the prior art, with the exception of that of the Hall patent, the aim has been to guide and keep the heads of the rods in the grooves, so as to resist any canting tendency, where force is applied to one side of the shade either to raise or lower it, thus assimilating the operation of raising and lowering the cur-tain to that attained by the various devices applied to hold a window sash in any position to which it may be raised or lowered, the rigid sides of the sash preventing any such tilting or buckling as is possi-ble in the raising or lowering of curtains and shades. In the de-vices referred to, the elongated metal heads attached to the ends of the curtain rods were intended by their form and by the enclos-ing fixtures of the jambs of the windows, to give as far as possible something of this rigidity to the sides of the curtain that is attained in a window sash by the sides of the sash, so that pressure on one side of the bottom of the curtain would result, as would pressure on one side of the bottom of a sash, in raising or lowering both sides alike, the bottom remaining horizontal, or the result might be to jamb and resist all movement whatever.

The device of the Sweeney patent is on the principle just de-scribed. We have a rigid curtain rod, the ends of which are fitted immovably to a metallic head, with a central friction block of some suitable material, held out yieldingly against the back of the groove by a flat spring between the friction block and the end of the rod. The head also is furnished with elongated arms, on the ends of which are antifriction rollers. This head, with its antifriction rol-lers, is so inclosed as that it may not pull out, and the rollers, in the language of the patent, "serve to properly guide the curtain while it is being operated." There is thus attained something of the rigidity of the window sash in its upward and downward move-ment. Although we have in the Sweeney device the same elongat-ed head with the antifriction roller tips at the end of each arm, and the friction tip at the center between the same, as the Forsyth pat-ent has, the principle of operation is different. Mr. Wilhelm, expert for complainant, says:

"As compared with the Sweeney device, the Forsyth device is based upon an apparently paradoxical notion, which is, that instead of connecting the head with the guide in such a way that it cannot substantially change its position of parallelism with reference to the guide, the device should leave the head perfectly free to tilt out of the guide (the groove) and yet make pro-vision to keep it in the guide (the groove) under the ordinary conditions of displacement which can occur in the handling of the curtain in practical use."

The Fondu (British and German) patents, exhibited in the record, supply a device with the same idea of rigid parts to guide the fixture as it moves up and down, performing the function of a window sash. In it, however, we have the elongated head and the roller tips bear-ing on suitable vertical tracks guiding the fixture to prevent it tilt-ing, whereas in the Forsyth patent in suit, every facility is furnished for tilting, and the self-righting feature, already explained, is re-

lied on to restore the normal horizontal position of the bottom of the shade.

To produce a device, which, besides the elongated head, anti-frictional roller tips and central frictional tip, should possess a self-righting capacity, was the object of the invention in the Forsyth patent. The invention of the means by which this object was attained, entitled him to the patent he received. But, in view of the prior art, his invention must be confined to the particular device invented for this purpose. This purpose limits his claims, as he has distinctly confined the same to curtains having self-righting capacity. In view of this specifically imposed limitation, these claims cannot be construed as broad enough to cover devices devoid of the self-righting capacity.

The defendant's alleged infringing device is one for which letters patent were issued to Daniel Hoyt, in 1901. It has therefore run the gauntlet of the Patent Office, and the letters patent were issued therefor presumably in view of the previously issued patents in suit. The defendant is therefore entitled to the presumption that the invention, as claimed, is not an infringement of the earlier patent in suit. The defendant's device belongs to the type of shade holder in the prior art which we have described, where the object in view has been to insure a rigid vertical movement of the shade, without tilting, preserving at all points the horizontal position of the bottom of the shade. The patentee of the defendant's device thus describes the object of his invention:

"My invention has for its object to provide a window shade holder which will permit the shade to be drawn down practically without resistance and without manipulation of any parts whatever, and which will automatically lock the shade against upward movement in any position in which it may be placed, it being an important feature of my novel shade-holder, that the locking of the shade is effected by cam action rather than by spring action, and that when force is applied to raise the shade that entire force is caused to act on both sides of the casing to resist the upward movement of the shade, thus rendering it practically impossible to raise the shade by a direct upward movement, while, on the other hand, the shade may be instantly and conveniently released by manipulation of the holder, it being understood, of course, that the holder is especially adapted for use upon spring or, as they are commonly called, 'self-acting' shades or curtains."

In the defendant's structure, to the ends of the tube running through the pocket in the bottom of the shade, are adjustably, but immovably, fixed metal heads with elongated arms at right angles to the tube, and fitting in the grooves of the window jambs. A metal cam is pivoted to the head just below the lower side of the tube, while its upper end is attached to a rod in the tube actuated by a spring which holds the cam by yielding pressure against the back of the groove. The other ends of these rods are in proximity at the middle of the tube, and have attached to them pinch handles, by which the cams may be withdrawn from contact with the back of the grooves. The eccentric pivoting of the cam is such that an upward pressure on the rod at the bottom of the curtain tends to throw it into closer engagement with the back of the groove, thus locking the curtain against all upward pressure, and making it

necessary to actuate the pinch handles, thus withdrawing the cam, in order to raise the curtain. There can, of course, then be no tilting of the bottom of the curtain by pressure upon one side, as in the Forsyth patent in suit. It is true, there is no locking by the cam against downward movement, and the curtain can be pulled down without touching the pinch handles, though not so easily as in the Forsyth device. But it is apparent that the object of the defendant's device is entirely different from that of, the Forsyth patent. So far from intending to facilitate the tilting of the head when one side of the curtain rod is raised, the intention is to prevent the raising of one side by any pressure whatever, by the locking function of the cam. The curtain can only be raised, as was the intention of the patentee, by pressing the pinch handles, thus releasing the locking pressure of the cams. While thus holding the pinch handles, the curtain is easily raised without any tilting of the heads, the roller tips then coming into play and serving to guide the upward movement, produced in large part by the upward pull of the spring roller. It is to be noted that the antifriction rollers of the Forsyth patent are only brought into play when the shade is tilted, having no function to perform as long as the shade moves vertically or preserves its normal position. The antifriction rollers, however, of the defendant's device serve to guide the shade while it is being operated, and must be in full play whenever the shade is being raised, which operation of raising can only be accomplished by the withdrawal of the locking cams, by the manipulation of the pinch handles.

It is true that in pulling the curtain down, by laying hold with considerable force of one side near the end of the rod, the other side will sometimes, to a certain extent, remain stationary; that is, until the lower margin of the curtain becomes more than a little oblique, but no self-righting capacity can develop itself, for the simple reason that the lower side is prevented from rising into normal position by the locking cam of defendant's device. In fact, it is not only not self-righting, but it cannot be raised into normal position except by relieving the pressure on the cams by manipulation of the pinch handles. When the cams are thus withdrawn, the upward pull of the curtain asserts itself, and the lower head rides up on the roller tips and the opposite one correspondingly descends. But this is not in any sense of the phrase an automatic self-righting operation. It requires the formed design, and act in pursuance thereof, of an intelligent being, to bring into play the forces that make this adjustment. The device of defendant's patent may be distinctly inferior to that of the patent in suit, owing to this absence of automatic self-righting capacity, but it accomplishes its own stated object, which is different from that of the patent in suit, and it does so by means that are peculiar to itself. Complainant urges that if the defendant's device does not in practice automatically right itself when the bottom of the curtain is pulled out of the horizontal position, there is a tendency so to do. Whatever this may mean, I have no difficulty in finding that defendant's fixture has no self-righting

capacity, in the sense meant by those words in the first and second claim of the Forsyth patent.

The Paterson patent in suit, No. 659,315, issued October 9, 1900, is for a fixture having rigid heads and friction pads on the ends of spring actuated rods passing into the tube in the bottom of the curtain. This friction pad acts independently of the guiding head, and is meant to be in contact with the back of the groove so as to hold the shade in the position in which it is set. The antifrictional rollers at the extremity of each arm of the head are intended at all times to bear against the back of the groove. The peculiar feature of this device, and which alone distinguishes it from the Sweeney and Fondu (British) patents, is the means for adjusting the heads longitudinally of the rod and rigidly securing the same to said rod in their adjusted positions. The claims involved are as follows:

"(1) In a shade fixture a rod adapted to be secured to the lower margin of a shade and provided at each end with a head having arms oppositely extended at right angles with said rod, means for adjusting said heads longitudinally of said rod and rigidly securing the same relatively to said rod in their adjusted positions, and antifriction devices at the extremity of each arm adapted at all times to engage the window-jamb whereby said rod is at all times held in a horizontal position.

(2) A holding mechanism for spring-actuated shades or the like, comprising a rod secured to the lower margin of a shade and provided at each end with a head, means for adjusting said heads longitudinally of the rod and rigidly securing the same relatively to said rod, an arm on each head forming right angles with said rod, a roller at the extremity of each arm adapted at all times to bear against a window jamb or the like and a friction device movable with respect to said heads and rod and adapted to yieldingly engage said window jamb.

(3) A holding device for spring-actuated shades comprising a rod having tubular ends and adapted to be secured to the lower margin of a shade or the like, a head secured on each end of said rod and adjustable longitudinally thereon, means for rigidly securing said head in its adjusted position, arms on each head extending at right angles with said rod and oppositely from each other, an antifriction device at the extremity of each arm adapted to engage at all times a window jamb or the like and a spring-pressed friction pad longitudinally movable with respect to said rod and adapted to engage the jamb intermediate of the extremities of said arm."

If we omit from the claims the "means for adjusting said head longitudinally of said rod," they would be anticipated by the Sweeney patent, and by the Fondu (British) patent. In the Paterson patent, the head is adjusted longitudinally with the rod, by means of a milled nut. This is not the means used for rigidly adjusting the head upon the tube of the defendant's structure. It is there accomplished by a threaded sleeve in the head fitting over the threaded end of the tube. It can hardly be seriously contended that the Paterson patent can cover every means of lengthening or shortening a rod or tube. The claims are not only thus limited, but they also restrict themselves to devices in which the "antifriction devices at the extremities at each arm of the head are adapted at all times to engage the window jamb." I have tried to read this language of the claims in the light of complainant's contention, viz., that "adapted" means merely "capable of being engaged with the window jamb." I cannot, however, so interpret it. The word "adapted," in the connection used, evidently means that the de-

vices are of such a character as at all times to engage the window jamb. And this meaning is the more plain when we read the immediately following words: "Whereby said rod is at all times held in a horizontal position." The antifriction rollers in defendant's fixtures do not at all times bear against the window jambs.

For the reasons stated, I am of opinion that the defendant does not infringe either the first or second claim of the Forsyth patent, or the first, second or third claim of the Paterson patent.

The bill must therefore be dismissed.