## CURTAIN SUPPLY CO. v. NORTH JERSEY ST. RY. CO.

(Circuit Court of Appeals, Third Circuit. January 22, 1906.)

### No. 61.

1. PATENTS—INFRINGEMENT—SHADE-HOLDING DEVICE.

   The Forsyth patent, No. 559,446, for a shade-holding device for use chiefly on car windows, is limited by the prior art to the self-righting feature which is its essential element. As so construed, *held* not infringed by the device of the Hoyt patent, No. 676,557.

2. SAME.

   The Patterson patent, No. 659,315, for a shade fixture, construed, and *held* not infringed.

Appeal from the Circuit Court of the United States for the District of New Jersey.

L. S. Bacon and C. C. Linthicum, for appellant.

J. Edgar Bull, for appellee.

Before ACHESON and DALLAS, Circuit Judges, and McPHERSON, District Judge.

J. B. McPHERSON, District Judge. This controversy is concerned with certain improvements in shade-holding devices, two patents being involved; the Forsyth patent No. 559,446, granted in May, 1896, and the Patterson patent, No. 659,315, granted in October, 1900. The shades to which the devices are specially intended to apply are those which are used in railroad or street railway cars. Peculiar conditions are present in these vehicles, that are not found in a private dwelling, and require special treatment. The characteristics of a satisfactory shade holder on a railway car are clearly stated by the appellant's counsel as follows:

"(1) A holding means which will maintain the fixture in any adjusted position despite the tendency of the shade roller to draw it up; despite the jarring of the car tending to loosen the hold; and despite the pressure of the wind which tends to displace the fixture when the window is open.

"(2) A guiding and controlling means which must be of such construction that the fixture may be adjusted by the average passenger without coming out of the grooves or guides and yet of such construction that it can be readily removed from the guide grooves in placing or removing the curtain.

"(3) It must be automatically adjustable to variations in distance between the grooves or guides at different points in the height of the window frame and therefore it must be disconnected from the frame or guides and yet capable of bearing at all times thereon so as to hold.

"(4) It must be of such construction that the lower edge of the curtain is normally in a horizontal position and easily restored to such position if it becomes tilted or canted during its manipulation, this restoring function being partly or wholly automatic.

"(5) The fixture as a whole must be a separate, concrete, or unitary structure capable of application and removal by unskilled workmen and without disturbing the window frame."

It is conceded that the Forsyth patent meets these requirements and it may be true that for the first time they were thus combined in a single structure. There is no doubt that this patent discloses a meritorious improvement, but, in view of the limitations imposed upon it by the

prior art, it cannot be awarded the position of a pioneer invention. Its distinguishing feature appears in the two claims that are said to be infringed:

"(1) A self-righting holding mechanism for spring-actuating shades comprising, in combination with a shade, heads carried thereby, said heads having separated bearing or contact points of diverse frictional holding power and arranged in such relation to each other that when the margin of the shade is moved from a horizontal position the bearing-point of least resistance will be engaged and the bearing point of greater frictional power wholly or partially withdrawn from contact whereby the shade may resume its normal horizontal position, substantially as described.

"(2) A self-righting holding mechanism for spring-actuated shades comprising, in combination with a shade, heads carried thereby, said heads having projecting friction-tips in the vertical faces thereof, and anti-friction rollers journaled in the extremities of said heads on opposite sides of the friction-tips, said heads and rollers adapted to bear upon the same opposing surface whereby when the shade is moved from a horizontal position, the roller will be brought into contact with such surface and the tip wholly or partially withdrawn from contact and the shade resume its normal horizontal position when released from the moving force, substantially as described."

The opinion of the Circuit Court, which is reported in 138 Fed. 734, shows clearly that the self-righting capacity of the Forsyth device is its essential feature, and, if this be granted, we think it follows necessarily that the defendant's holder does not infringe. We cannot improve on the language of the court below in stating the reasons why this conclusion must be reached, and we therefore repeat that portion of Judge Gray's opinion:

"That the self-righting capacity of this device is the essential feature of the invention, is apparent from a brief survey of the prior art. The patentee, in his specifications, refers to only a certain portion of the prior art, which was embodied in the Hall patent of 1891. This patent shows rods slidably mounted in a pocket or tube in the lower margin of the shade, and carrying friction tips at their outer ends, adapted to traverse grooves in the jambs of the windows, and held against the back of said grooves by the outward pressure of the coiled springs actuating said rods. These friction tips, not much wider than the end of the rod, are of rubber, and are seated in a metal pocket at the end of said rods. The friction of these rubber tips on the back of the grooves, serves to hold the shade with the lower edge horizontal against the upward pull of the spring roller at the top, the shade being easily lowered or raised by pressing together the pinch handles attached to the inner ends of the spring actuated rods, thus withdrawing the friction tips from contact with the back of the grooves. The degree of outward pressure on these friction tips is generally such that the shade could be raised or lowered without touching the pinch handles, by using force enough, with the hand on the bottom of the shade, to overcome the holding power of the friction tips. It was this tendency to raise or lower the shades, without withdrawing the friction tips by pressure on the pinch handles, that caused the trouble sought to be overcome by the Forsyth patent in suit. Persons who are careless or ignorant were apt to seize one side of the bottom of the shade, through which the tube and rods passed, to force it up or down. The result generally was that only the side to which the force was applied was raised or lowered, leaving the shade in a canted position, and the tendency was for the heads and friction ends of the rods to come out of the grooves and leave the shade flapping. The Forsyth patent in suit met this difficulty by using the same spring actuated rods, securely fastened to metal heads with elongated arms slidable in the grooves, with a friction tip in the centre, of rubber or other substance, calculated when passed against the back of the groove, to resist the upward pull of the spring roller. The extremities of the elongated metal

heads were either rounded, so as to diminish friction, or provided with anti-friction rollers, so adjusted with reference to the central friction tip as that the latter shall extend outwardly a little beyond the line of the bearing of said extremities, so that when the bottom of the shade is in its normally horizontal position, the metal extremities of the head or the roller tips are not quite in contact with the back of the grooves. When, however, one side of the shade is pulled down further than the other, the central friction tip on that side is measurably withdrawn from contact with the back of the groove by the tilting of the elongated head, the anti-friction roller of the upper arm coming in contact with the back of the groove, and acting as a fulcrum upon which the lower end swings out, or nearly out, of the grooves. The position of things in the opposite groove is just the reverse. The central friction tip is withdrawn to the same extent as in the other end, but the roller tip of the lower arm of the head is in contact with the back of the groove, the upper one being displaced as described. As the metal head is fastened securely upon the spring actuated rod, there is a tendency, resulting from the pressure in the lower and upper arms of the heads on the opposite sides of the shade, to press the rods inwardly against the yielding pressure of the springs. In this position, the self-righting feature of the invention is intended to come into play, and, when everything is in proper adjustment, does come actually into play. The frictional holding tip in the center of the head being withdrawn from its contact with the back of the groove, the head slides easily on the anti-friction roller tip in the lower arm of the head on one side, and on the roller tip in the upper arm of the head on the other. The head on the side pulled down rolls up on the roller tip of its topmost extremity, and the head on the opposite side tends to move downward on the roller tip of its lower extremity into normal position, with the bottom of the shade horizontal. This is the self-righting function claimed for the device in the Forsyth patent in suit."

The defendant's holder operates in a different manner, as a further quotation from the opinion will make clear:

"In the defendant's structure, the ends of the tube running through the pocket in the bottom of the shade, are adjustably, but immovably, fixed metal heads with elongated arms at right angles to the tube, and fitting in the grooves of the window jambs. A metal cam is pivoted to the head just below the lower side of the tube, while its upper end is attached to a rod in the tube actuated by a spring which holds the cam by yielding pressure against the back of the groove. The other ends of these rods are in proximity at the middle of the tube, and have attached to them pinch handles, by which the cams may be withdrawn from contact with the back of the grooves. The eccentric pivoting of the cam is such that an upward pressure on the rod at the bottom of the curtain tends to throw it into closer engagement with the back of the groove, thus locking the curtain against all upward pressure and making it necessary to actuate the pinch handles, thus withdrawing the cam, in order to raise the curtain. There can, of course, then be no tilting of the bottom of the curtain by pressure upon one side, as in the Forsyth patent in suit. It is true, there is no locking by the cam against downward movement, and the curtain can be pulled down without touching the pinch handles though not so easily as in the Forsyth device. But it is apparent that the object of the defendant's device is entirely different from that of the Forsyth patent. So far from intending to facilitate the tilting of the head when one side of the curtain rod is raised, the intention is to prevent the raising of one side by any pressure whatever, by the locking function of the cam. The curtain can only be raised, as was the intention of the patentee, by pressing the pinch handles, thus releasing the locking pressure of the cams. While thus holding the pinch handles, the curtain is easily raised without any tilting of the heads, the roller tips then coming into play and serving to guide the upward movement, produced in large part by the upward pull of the spring roller. It is to be noted that the anti-friction rollers of the Forsyth patent are only brought into play when the shade is tilted, having no function to perform as long as the shade moves vertically or preserves

its normal position. The anti-friction rollers, however, of the defendant's device serve to guide the shade while it is being operated, and must be in full play whenever the shade is being raised, which operation of raising can only be accomplished by the withdrawal of the locking cams, by the manipulation of the pinch handles.

"It is true that in pulling the curtain down, by laying hold with considerable force of one side near the end of the rod, the other side will sometimes, to a certain extent, remain stationary; that is until the lower margin of the curtain becomes more than a little oblique, but no self-righting capacity can develop itself, for the simple reason that the lower side is prevented from rising into normal position by the locking cam of defendant's device. In fact, it is not only not self-righting, but it cannot be raised into normal position except by relieving the pressure on the cams by manipulation of the pinch handles. When the cams are thus withdrawn, the upward pull of the curtain asserts itself, and the lower head rides up on the roller tips and the opposite one correspondingly descends. But this is not in any sense of the phrase an automatic self-righting operation. It requires the formed design, and act in pursuance thereof, of an intelligent being, to bring into play the forces that make this adjustment. The device of defendant's patent may be distinctly inferior to that of the patent in suit, owing to this absence of automatic self-righting capacity, but it accomplishes its own stated object, which is different from that of the patent in suit, and it does so by means that are peculiar to itself. Complainant argues that if the defendant's device does not in practice automatically right itself when the bottom of the curtain is pulled out of the horizontal position, there is a tendency so to do. Whatever this may mean, I have no difficulty in finding that defendant's fixture has no self-righting capacity, in the sense meant by those words in the first and second claim of the Forsyth patent."

The Patterson patent does not call for special discussion. It is satisfactorily dealt with by the Circuit Court, in whose full and adequate opinion we wholly concur.

The decree dismissing the bill is therefore affirmed, with costs.