―――――――――

### THE BODO.

(District Court, S. D. New York. September 24, 1907.)

1. SHIPPING—LOSS OF CARGO—LIABILITY OF VESSEL UNDER CHARTER PARTY.
   A vessel *held* liable to a charterer under a clause of the charter party, which was for the carriage of bananas, providing that should the vessel be stranded or exposed to other perils resulting in jettison, and the vessel be saved, the owners should pay for the bananas jettisoned 50 cents per stem. The claim that prior to the stranding of the vessel the bananas had become frozen and worthless *held* not sustained by the evidence, even if such fact would constitute a defense.
   [Ed. Note.—Loss by perils of the sea, see notes to The Dunbritton, 19 C. C. A. 465; Southerland-Innes Co. v. Thynas, 64 C. C. A. 118.]

2. INSURANCE—MARINE INSURANCE—RIGHT OF SUBROGATION.
   The insurer of a cargo is not subrogated to the right of the owner to recover from the vessel for its loss unless it has paid the loss in full.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, §§ 1506–1508.]

In Admiralty. Suit for loss of cargo.

Wheeler, Cortis & Haight, for libellant.
Butler, Notman & Mynderse, for claimant of steamer.
Anthony M. Menkel, for intervenor.

ADAMS, District Judge. This action was brought by the Atlantic Fruit Company to recover from the steamship Bodo the sum of $6,884, for the loss of a cargo of bananas caused by the stranding of the steamship, while on a voyage from Jamaica to New York, on the south shore

of Long Island, during the month of March, 1906, where the bananas were jettisoned to save the said vessel. The claim is made under the following provision of the charter party, dated August 12th, 1905:

"22. Should the vessel be stranded or exposed to other perils resulting in jettison of bananas, and the vessel be ultimately saved the shipowners agree to pay to the Charterers for the bananas jettisoned 50 cents United States currency per stem of bananas, and further to assume all liability for the banana cargo's contribution to general average and salvage expenses."

The answer admits the stranding but denies the right to recover because the whole cargo was frozen and became entirely worthless in consequence of said stranding, the temperature in the holds of the steamer becoming inevitably reduced so that the freezing and the consequent spoiling of the fruit was not covered by the said clause and according to its true intent and meaning there could be no recovery for frozen or worthless bananas when jettisoned but only for merchantable fruit.

The Mannheim Insurance Company was the insurer of the said cargo and filed a petition alleging such fact and asking permission if there should be a recovery to intervene and collect the sum of $5,045.60 paid to the libellant in consequence of the disaster, by reason of its rights of subrogation. The libellant answered the petition alleging that the value of the lost cargo was upwards of $13,000, and denied the right of subrogation.

The testimony shows that the steamer became stranded on the beach March 20th through the navigator mistaking lights on the Long Island shore for lights on the New Jersey coast and acting upon that supposition the steamer was put full speed ahead. The weather had been hazy but cleared up about this time and a course was taken N. ¼ E. with the expectation that it would carry her to the channel but about 1 A. M. breakers were observed ahead and a reversal of the engine proved insufficient to prevent the stranding. About 1.15 A. M. she struck at a point on Jones' Beach off Amityville, and was turned by the seas so that her port side was exposed to the southerly gale which then prevailed.

The cargo was shipped in good order and was in merchantable condition at the time of stranding. Steam had been turned on the forehold on the 19th to keep the temperature at the proper state, which was from 55 to 60 degrees. The temperature of the fruit itself was sufficient to keep it warm, with the closing of the apertures to the outer air, the ventilators and hatches. There was no steam in the after hold, or facilities for using it there.

The master of the steamer telegraphed to a wrecking company in New York for assistance which was received by that company about 6.30 A. M. of the 20th. The steamer Chapman and Merritt was accordingly sent and arrived at the Bodo at 12.45 P. M. She found her high and dry and subsequently proceeded to save her by jettisoning the cargo in the way stated, supposing it was then frozen and spoiled.

The controverted question in the case with respect to the condition of the fruit when the vessel stranded is determined in favor of the libellant as the testimony convinces me that it remained in a merchantable state for several days. The wrecking people supposed it to be spoiled

when they took it out and doubtless at that time it was somewhat injured but such fact has little bearing upon condition at time of stranding. It was very cold weather and a few hours of exposure would have had such an effect. A portion of the fruit was taken out of the vessel by a number of entirely disinterested people who testified that it was then good and remained so until eaten when taken care of by avoiding too much exposure to the cold air. Some taken out by others was exposed to the air and very soon was spoiled, so that these parties testified it was frozen when they took it out and doubtless supposed so but the preponderance of the testimony shows that at the time of stranding, there could scarcely be a question as to its being in a condition to bring the above quoted clause of the contract into operation. The cargo was all discharged by the 24th and the vessel saved and taken to New York on the 27th.

If the contract required that the cargo should be in merchantable condition at the time of stranding, then the testimony shows that such condition existed. It is doubtful, however, if it was incumbent upon the libellant to establish that fact. The contract provided absolutely for the payment of 50 cents per stem in case of jettisoning and it is difficult to see how the liability of the ship is affected by the condition. If the parties chose to make such an agreement why should they not be bound by it? I have been referred to no qualification of the absolute agreement in the contract and there does not appear to have been any. It was the fault of the steamer, not in any way of the charterer, that the loss occurred and she should pay for it.

On the question of the right of the insurance company to intervene and participate in the libellant's recovery that must follow from the foregoing conclusion, the right of subrogation has been invoked but that right cannot exist unless the payment by the underwriter was in full of the loss. Sheldon on Subrogation, § 127. No proof of value has been given in the case as that question was deemed by the court as one for a commissioner. It will be necessary therefore that a reference be had to determine the value of the bananas at the time of stranding.

Decree for the libellant with an order of reference.