CURTAIN SUPPLY CO. v. NATIONAL LOCK WASHER CO.

(Circuit Court, N. D. Illinois, E. D.    April 5, 1909.)

No. 27,782.

1. PATENTS (§ 83*)—PRIORITY AS BETWEEN INVENTORS—LACHES IN APPLYING FOR PATENT.

An inventor, who, after perfecting his invention and reducing it to prac-tice, without adequate excuse delays applying for a patent for five or six years, and until another has invented and patented the same device, and then applies for and obtains a patent, is estopped by his laches from asserting such patent as against the second inventor.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 108, 109; Dec. Dig. § 83.*

Laches as defense in suit for infringement, see notes to Taylor v. Sawyer Spindle Co., 22 C. C. A. 211; Richardson v. D. M. Osborne & Co., 36 C. C. A. 613.]

2. PATENTS (§ 328*) — PRIORITY AS BETWEEN INVENTORS — WINDOW SHADE HOLDER.

The Paterson patent, No. 754,404, for a window shade holder, claimed to have been invented by the patentee 5 years and 8 months before he

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

·filed `his· application, is invalid·as against the Hoyt patent, covering substantially the same device, which was invented and patented in the meantime.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

3. PATENTS (§ 311*)—SUIT FOR INFRINGEMENT—DEFENSES—PLEADING.

In a suit for infringement of a patent, where defendant manufactures under a patent of prior date, but complainant undertakes to carry the date of his invention back to a still earlier date, although no such issue is tendered by his pleading, defendant may meet such proof by the defense of laches or abandonment, without pleading the same, since, if pleaded, it would not be responsive to anything in the bill.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 311.*]

In Equity. Suit by the Curtain Supply Company against the National Lock Washer Company. Decree for defendant.

Offield, Towle & Linthicum (Charles C. Linthicum, of counsel), for complainant.

Gifford & Bull (J. Edgar Bull, of counsel), for defendant.

KOHLSAAT, Circuit Judge. Complainant files its bill to restrain infringement of patent No. 754,404, granted to J. W. Paterson March 8, 1904, on application filed August 1, 1901, for improvements in curtain fixtures. The cause is now before the court on final hearing.

Matters very similar to those here involved were before the Circuit Court for the District of New Jersey in 1902, in the cause brought by complainant herein against North Jersey St. Ry. Co. (138 Fed. 734), upon patent to Forsyth, No. 559,446, and patent No. 659,315, granted to J. W. Paterson. The street railway company was a customer of defendant herein, by whom the defense was assumed. The court (Judge Gray) held that infringement was not shown. This was affirmed on appeal. 142 Fed. 750, 74 C. C. A. 12. This suit was begun June 15, 1905.

Claims 1 and 2, which are the only claims relied on, read as follows, viz.:

"1. In a window-shade holder, the combination, with a casing and a spring-actuated shade, of a bar carried by the shade, a pivoted locking-cam at the end of the bar adapted to engage the casing above its pivoted point, a rod carried by the bar and pivotally connected to the cam, a spring for normally forcing the rod outward to set the cam into holding engagement with the casing, and means for retracting the rod.

"2. In a window-shade holder, the combination, with a casing and a spring-actuated shade, of a bar carried by the shade having ends extended to serve as guides, pivoted locking-cams at the end of the bar, spring-actuated rods within the bar pivotally connected to the cams, and means for retracting the rods to release the cams from holding engagement with the casing."

It appears from the record that the patentee, Paterson, was the purchasing agent in 1895 for the Adams & Westlake Company of Chicago; that he was not a mechanic, though he was running a small car-curtain factory. He was interested in making a car-curtain fixture which would lock against the upward movement of spring rollers, and yet would pull down easily. Some time in November, 1895, he claims to have invented, among other devices, the curtain fixture shown as

"Exhibit Paterson Original Fixture." He says he caused it to be made and mounted in a curtain and set up in a window frame. It was thus reduced to practice within the decisions. Shortly thereafter he took the frame, curtain, and device to pieces, and placed the locking fixture in his home, giving it no further attention. Several years later he mutilated the device for some unexplained reason, so that it was mere junk. While the fixture was in this condition, and on June 18, 1901, the patent under which defendant operates was granted to D. Hoyt upon application filed December 8, 1900. In the spring of 1901 Paterson sold out his business, including all inventions, to complainant, and agreed to remain out of the curtain fixture business for 15 years. He mentioned to the president of complainant that some 6 years before he had devised several curtain fixtures. He was requested to look them up, and thereupon produced the rod, "Complainant's Exhibit, Paterson Original Fixture," being the mutilated fixture. The other attempts at curtain fixtures were not to be found. This rod was thereupon made the subject of Patent Office drawings. The Hoyt patent was not yet issued. In June, 1901, the Hoyt fixture was exhibited at the Saratoga convention of the Master Car Builders' Association, where complainant's president saw and inspected it. Thereupon it was determined to use the mutilated bar in securing a patent anticipating that of Hoyt. Therefore this suit.

From the foregoing it is seen that Paterson allowed 5 years and 8 months to elapse, after he had reduced his invention to practice, without doing anything to place it where the public might eventually get the benefit of it, and then became active only at the solicitation of his assignee. There is no claim in the record that Hoyt, or any one else other than Paterson, had ever heard of this device. It is insisted for defendant that, as against the Hoyt fixture, Paterson is estopped from asserting his invention at this time.

It has been held in many cases that long delay in applying for a patent, unexplained, will amount to such laches as will avoid the patent, when other and intervening rights have arisen. Some authorities hold that abandonment of the invention will be presumed in such case. It should be stated that defendant has made large expenditures in placing its device on the market, while complainant has done little or nothing to that end.

It is the settled doctrine of the Court of Appeals for the District of Columbia that when an inventor perfects and reduces to practice an invention, and fails for an unreasonable period to take steps to give it to the public, and until some one else has independently invented and patented it, the earlier inventor forfeits his rights to a patent as against the later inventor. See Mower v. Crisp, 83 O. G. 155; Mason v. Hepburn, 84 O. G. 147; Davis v. Forsyth & Forsyth, 87 O. G. 516; Mower v. Duell, Commissioner, 88 O. G. 191; Thomson v. Weston, 94 O. G. 985; Wright v. Lorenz, 101 O. G. 664; Macdonald v. Edison, 105 O. G. 973. The same rule has often been laid down by the other courts. See Robinson on Patents, § 389. See, also, Berg v. Thistle, Fed. Cas. No. 1,337. "An inventor," says the court in Eck v. Kutz (C. C.) 132 Fed. 758, "if he keeps his ideas to himself, can take his own time to develop and perfect them, subject only to the risk that others mean-

while may become independently possessed of the same"—citing Bates v. Coe, 98 U. S. 31, 25 L. Ed. 68, where it is said: "Inventors may, if they can, keep their invention secret; and if they do for any length of time, they do not forfeit their right to apply for a patent, unless another in the meantime has made the invention, and secured by patent the exclusive right to make, use, and vend the patented improvement. Within that rule and subject to that condition, inventors may delay to apply for a patent * * *"—and Consolidated Fruit Jar Co. v. Wright, 94 U. S. 92, 24 L. Ed. 68.

It is held in Universal Adding Machine Company v. Comptograph Company, 156 Fed. 981, 77 C. C. A. 227, that an invention would be abandoned or lost through eight years in inaction. In Ajax Forge Company v. Morden Frog & Crossing Works (C. C.) 156 Fed. 591, it was held that delay in applying amounted to abandonment. This was affirmed. 186 Fed. 594. The same is held in Kellogg Switchboard & Supply Company v. International Telephone Company et al. (C. C.) 158 Fed. 104, wherein it was sought to have the invention declared to have been abandoned, even though an application had been filed, through the failure of the patentee to press the same for two years. In denying the motion, the court says the delay shows no intention to abandon the invention, "because so long as it was not in public use, and no one else had made and procured a patent for the same discovery, his right to apply for a patent was subject to no restriction."

In Christie v. Seybold, 55 Fed. 69, 5 C. C. A. 33, cited by complainant, the court is dealing with diligence in reducing to practice. Here the alleged negligence consists in failing to apply for a patent until the lapse of almost six years after reduction to practice, whereby intervening rights have arisen. Walker on Patents, § 91, says:

"But a delay of years, between reduction to practice and filing an application for a patent, which is taken for the purpose of profiting, first from secrecy, and finally from a patented monopoly, is a delay which constitutes actual abandonment, even if the inventor intended to apply for a patent when he could maintain secrecy no longer."

In Boyd v. Cherry (C. C.) 4 McCrary, 70, 50 Fed. 279, it is said that, if the invention is "kept secret by the first inventor until the second has discovered it and given it to the public, the latter will be protected, for it is to him that the public is indebted." In Kendall v. Winsor, 21 How. 322, 16 L. Ed. 165, it is stated that the monopoly of a patent was never granted to inventors for their exclusive benefit, and that doubtless the primary object was the benefit of the public. In Robinson on Patents, § 390, it is said that an "inventor, who, having perfected his invention, voluntarily conceals it and unreasonably delays his application for a patent, thereby willfully misleads subsequent and innocent inventors, * * * and therefore ought to be estopped from patenting the invention and appropriating its exclusive enjoyment to himself after their honest efforts in the same direction have succeeded." A large number of cases holding in conformity with the above are cited in 30 Cyc. p. 864. See, also, 22 Am. & Eng. Ency. of Law (2d Ed.) pp. 342, 343.

It seems plain, therefore, that under the facts stated herein Paterson's failure to apply for a patent within 5 years and 8 months after

reducing the curtain fixture to practice, unexplained, together with the fact that another had in the meantime, and in good faith, invented the same fixture and taken out a patent therefor, estops complainant from asserting its patent herein. There seems to be some disagreement of the authorities as to whether a valid patent could in such case issue to the second inventor or was abandoned to the public. The question is not here involved.

By way of excusing his laches, Paterson sets out that he was employed by Adams & Westlake Company at a salary of $1,300 per annum; that in 1890 he commenced to make curtains and fixtures for the company; that he was still in the same employ when the above-mentioned litigation arose with Burrowes; that by a settlement had of said litigation he was not permitted to make for Adams & Westlake Company pinch handle fixtures. This was in 1893. The invention is claimed in 1895. Paterson refused to disclose his invention to Adams & Westlake Company, because he feared they would claim it, and was thus kept from disclosing it. In 1896 he sold his business to the Adams & Westlake Company for $900 and left their employ. He claims to have found the fixture then in demand to be different from his invention. He invented and patented another patent, No. 659,315, on October 9, 1900, which he sold to complainant in 1901. He considered the device of this latter patent the easiest type to market. He claims he was hard up, having had recourse to his wife's earnings in securing the last-named patent. He never made more than $1,850 per annum after leaving the Adams & Westlake Company. He had a family to support. On the other hand, he utterly ignored his alleged invention, forgetting where it was. He practically destroyed his bar. He was always in possession of a fair income. He had $900 from the sale of his business to his employer. He must have received some substantial sum from the sale of his patent, though that was as late as 1901. It is plain that his failure to apply for a patent arose from want of interest in his device, and perhaps in part from the fear that it would not be in demand. He did not deem it of sufficient importance to describe it in his contract of sale to complainant company, if, indeed, he even remembered it at that time. Surely this state of facts cannot be held to excuse his delay. Inventors seldom make a better financial showing. If Paterson had so desired, he could easily have made his application. To all intents and purposes he abandoned his invention, and to permit him to urge his patent in prosecution of this suit would be a plain injustice.

Complainant insists that the defense of abandonment is not properly before the court, because abandonment is not set up in the answer. It would seem to be a hopeless task to reduce the pleadings in a patent case at this bar to the ordinary forms laid down in equity pleading. The bill herein sets up the conventional facts and allegations. The answer presents the usual denials and averments, including a list of patents in the prior art. Among these is the Hoyt patent aforesaid. There was no other course open to the defendant. To have alleged laches or abandonment of the invention would not have been responsive to the bill. The replication, of course, is general. As is usual

in such cases, the evidence is a departure from both the bill and answer. Ordinarily, the bill should have been amended to include a statement of the facts depended on to carry the invention back of defendant's Hoyt patent, together with a recital of the facts relied upon to account for and excuse the delay in making application. Defendant cannot be charged with knowledge that complainant would make this claim, so far as this record shows. Defendant could then have set up laches and abandonment. Certainly, to have set it up, even after the evidence disclosed complainant's case, would have still made the answer cover matters not set out in the bill. Here was no attempt to correct either bill or answer. The whole matter proceeds upon lines not pleaded.

True, complainant raised the point on defendant when it attempted to show laches and abandonment by the evidence; but, until the bill had been corrected, how could the answer be complained of? No abandonment of the patent is claimed, but what is tantamount to a constructive abandonment of the invention. There is some confusion in the use of the terms "abandonment," "laches," and "estoppel." Perhaps it may be more accurately said that by Paterson's laches, or that of complainant, the latter has brought about such a situation as estops it from asserting its said patent against defendant. The objection must be overruled. As above stated, it is conceded that the defendant's device is that of the Hoyt patent. It therefore follows that it is made in accordance with, and is entitled to the immunities of, that patent for the purposes of this suit.

The bill is dismissed for want of equity.