Mr. Justice DANIEL
 

 delivered the opinion of the court.
 

 This was an action, on the case in the Circuit Court of the United States,- instituted by the defendant in error against the' plaintiffs, for the recovery, of damages for an alleged infringement by the latter of the rights of the former .as a patentee., No question was raised upon the pleadings or the evidence in ■ this case as to the originality or novelty of the invention patented, nor with respect to the identity of that invention with the machine complained of as an infringement of the rights of the patentee, nor as to the use of that machine. ' These several facts were conceded, or at any rate were not controverted, between the parties to this suit.
 

 Under the plea of
 
 not
 
 guilty, the defendant in the Circuit Court gave notice of the' following defences to be made by him:
 

 1. A license from the plaintiff to use his invention.
 

 2. A right to use that invention in virtue of the 'seventh section of the act of Congress of the 3d of March, 1839, which section provides, “That every person or corporation who has " or shall have, purchased or constructed any newly-invented machine, manufacture, or composition of matter, prior to' the application of the inventor or discoverer for a patent, shall be held to possess the right to use, and vetjd to'others to be. used, the specific machine, manufacture, or composition"of matter, so made of purchased, without liability therefor to the inventor or any other person- interested in such invention.” ,
 

 To the relevancy and effect, of the evidence adduced with reference to the two .defences'thus'notified, and to the questions of law arising upon the issues made by those defences, this controversy is properly limited.
 

 • Upon the trial in the Circuit Court, in support of this defence, evidence was introduced tending to show that the plain
 
 *324
 
 tiff' constructed a machine in substantial conformity with his specification as early as 1846, and that in 1849 he had several such machines in operation, on which he made harness to supply all such orders as.he could, obtain; that he continued to run these machines until he obtained his letters patent *, that he repeatedly declared to different persons that the machine was so complicated that he preferred not to take a patent, but to i’ely on the difficulty of imitating the machine, and the secrecy in which he kept it. And the defendants also gave evidence tending to prove that the first of their machines was completed in the autumn of 1858, and the residue in the autumn of 1854; and that, in the course of that fall, the plaintiff had knowledge that the defendants had built, or were building, one or more machines like his invention, and did not interpose to prevent them.
 

 The plaintiff gave evidence tending to prove that the first machine built by him was never completed so as to operate; that his second machine was only partially successful, and improvements wei’e made upon it; that in 1849 he began four others, and completed them in that year, and made harness on them, which he sold when he could get' orders; that they were subject to some practical difficulties, particularly as it respected the method of marking the harness, and the liability of the bobbin to get out of the. clutch; that he was émployed in devising means to remedy these defects, and did remedy them.; that he also endeavored to simplify the machine by using only one ram-shaft; that he constantly intended to take letters patent when he should have.perfected the machine; that he applied to Mr. Keller for this purpose in February,' 1853, but the model and specifications were not sent to ‘Washington till November, 1854; that he kept.the machines from the view of the public, allowed none of the hands employed in the mill to introduce persons to view them, and that the hands pledged themselves not to divulge the invention;' that among the hands employed by the plaintiff' was one Kendall Aldridge, who left the plaintiff’s employment in the autumn of , 1852, and entered into an arrangement with the defendants to copy the plaintiff’s machine for them, and did so; and that it was by'Aldridge, and
 
 *325
 
 under his superintendence, arid by means of the knowledge which he had gained while in the plaintiff’s employment, under a pledge of-secrecy, that the defendant’s maclnnes were built and put in operation; and that one of the defendants had procured drawings of the plaintiff’s machine, and has taken out letters patent for it in England.
 

 Each party controverted the facts thus sought to be proved by the other.
 

 The defendant’s counsel prayed , the court to instruct the jury as follows:
 

 1. That it is the duty of an' inventor, if he would secure the protection of the patent laws, to apply for a patent as soon as his machine (if he-has invented a machine) is in practical working order, so as to work regularly every day in - the business for which it was
 
 designed;
 
 and if he does not so apply, he has no remedy against any persons who possess themselves of the invention, with his knowledge and. without his notification to desist, or of his claims as an inventor before he applies for his patent.
 

 2. That a machine can no longer be considered as an experiment, or the subject of experiment,- when it is worked .regularly. in the course of business, and produces a satisfactory fabric, in quantities sufficient to supply the entire demand for the article.
 

 3. That in order to justify the delay of the plaintiff in applying for a patent after his machine was in practical working ..'order, on the ground of the desire to improve and perfect it, the plaintiff must show some defect in construction, or difficulty in the operation, or mode of operation, which he desired and expected to remove jay further thought and study; and if no such thing is shown, then the machine must be held to have been completed and finished, in the sense of the pateht .law, at the time it was put in regular working use and operation.
 

 4. That under the 7th section of the act of 1839, entitled,' &e., if the jury are satisfied that the machines for the use of which the defendants are sued were constructed and put in operation before the plaintiff applied for his patent, then the defendants possessed the right to use, and vend to others to be
 
 *326
 
 used, the specific machines made dr purchased by them, without liability therefor to the plaintiff; and the jury aré to inquire and find only-the fact of such construction before the date of the plaintiff’s application, in order to render a verdict for the defendants.
 

 5. That under said section of said act, if the machines used by the defendants were purchased or constructed by them before the application of the plaintiff for his patent, with the . knowledge of the plaintiff, then they must be held to possess the right to use, and vend to others to be used, the machines so purchased or constructed; and the jury are to inquire into and find only the fact of such purchase 'or construction, and that the plaintiff had knowledge of the same, in order to render a verdict for the defendants.
 

 6, That under said section of said act, if the machines used by the defendants were purchased or constructed by them before the application of the plaintiff for his patent,- without the knowledge of the plaintiff, and without his notifying the defendants of his claim as the inventor, and requiring them to desist from such construction, then they must be held to possess the right to use, and vend to others to use, the machines so purchased or constructed; and the jury are to inquire only-into and find the fact of such purchase or construction, and that the plaintiff had knowledge of the same, and did not notify the defendant to desist from such purchase or construction of his claims as inventor, in order to render a verdict for the defendants.
 

 The court set aside all those prayers for instructions, and did instruct the jury as follows:
 

 1. That if Aldridge, under a pledge of secrecy, obtained knowledge of the plaintiff’s machine — and he had not abandoned it to the public — and thereupon, at the instigation of the defendants, and with the knowledge, on their part, of the surreptitiousness of his acts, constructed machines for the defendants, they would not- have- the right to continue to use the same after the date of the plaintiff’s letters patent.
 
 But if the defendants had these machines constructed before the plaintiff ’s application for his letter9 patent, under the belief authorized by him that he
 
 
 *327
 

 consented and allowed them so to do,
 
 then they might lawfully continue to use the same after the date of the plaintiff’s letters patent, and the plaintiff could not recover in this action. And that if the jury should find that the plaintiff’s declaration and conduct were such as to justify the defendants in believing he did not intend to take letters patent, but to rely on the difficulty of imitating his machine, and the means he took to keep it secret, this would be a'defence to the action. And they were further instructed, that to constitute such an abandonment to the public as would destroy the plaintiff’s right to take a patent, in a case where it did not appear any sale of the thing patented had been made, and there was no open public exhibition of the machine, the jury must find that he intended to give up and relinquish his right to take letters patent. But if the plaintiff did intend not to take a patent, and manifested that intent by his declarations or conduct, and thereupon it was copied by the defendant, and so went into use, the plaintiff could not afterwards take a valid patent..
 

 To which refusal to give the instructions prayed for, as well as to the instructions'given, the defendants, by their counsel, excepted before the jury retired from the bar; and, as the paatter thereof did not appear of record, prayed the court to allow- and seal this bill of exceptions; which, being found correct, has been allowed and sealed accordingly by the presiding judge. B. R. CURTIS,
 

 [l. s.] ■
 
 Justice Sup. Ct. U. S.
 

 The first ground of defence assumed under the notice from the defendant in the court below — viz: a license from the patentee — may at once be disposed of by the remark that tío evidence was offered on the trial, bearing directly or remotely' upon the fact of an actual license from the patentee, either to the .defendant or to any person whomsoever. The defence then must depend exclusively upon the proper construction of the section of the law above cited, and the application-of that section to the conduct of .the parties, as shown by the bill of exceptions.
 

 It is undeniably true, that the limited and temporary mo
 
 *328
 
 nopoly granted to inventors was never designed for their exclusive profit or advantage; the benefit to the public or community at large was another and doubtless the primary object in granting and securing that monopoly. This was at once the equivalent given by the public for benefits bestowed by the genius and meditations and skill of individuals, and the incentive to further efforts for the saíne important objects. The true policy and ends of the patent laws enacted under this . Government are. disclosed in that article of the Constitution, the source of all these laws, viz: ‘Ho promote the progress of science and the useful arts,” contemplating and necessarily implying their extension, and increasing adaptation to the uses ,of society. (Vide .Constitution of the United States, art. 1, see. 8, clause 9.) By correct induction from these truths, it follows; that the inventor who designedly, and with the view . of applying it - indefinitely and exclusively for his own profit, , -withholds his invention from the public, comes not within the. policy or objects of the Constitution or acts of Congress. He does not promote, and, if aided in his design, would impede, the progress of science and the useful arts. And with a very bad-grace could he appeal for favor or protection to that society which, if he had not injured, he certainly had neither benefited nor intended to benefit. Hence, if' during such a concealment, an invention similar to or identical with his own should be made and patented, or brought into use without a patent, the latter could not be inhibited nor restricted, upon proof of' its identity with a machine previoúsly invented and withheld and concealed by the inventor from, the public. The rights and interests, whether of the public or of individuals, can .never be made to yield to schemes of selfishness or cupidity ; moreover, that which is once given to or is invested in the public, cannot be recalled nor taken.from them.
 

 But the relation borne to the public by inventors, and the obligations they are bound to fulfil in order to secure from the former protection, and the right to remuneration, by no means forbid a delay requisite for completing an invention, or for a test of its value ór success by a series -of sufficient and practical experiments; nor do they, forbid a discreet and rea
 
 *329
 
 sonable forbearance to proclaim tbe theory or operation of a discovery during its progress to completion, and preceding an application for protection in that discovery. The former may be highly advantageous, as tending to the perfecting the invention ; the latter may be indispensable, in order to prevent a piracy of the rights of the- true inventor.
 

 It .is the unquestionable right of every inventor to confer gratuitously the benefits of his ingenuity upon the public, and this he may do either by express declaration or by conduct equally significant with language — such for instance, as an acquiescence with full knowledge in the' use of his invention by-others ; or he may forfeit his rights as an inventor by a wilful or negligent postponement of his claims, or by an attempt to withhold the benefit of his improvement from the public until a similar or the same improvement should have been made and introduced by others. Whilst the remuneration of genius and useful ingenuity is- a duty incumbent upon the public, the rights and welfare of the community must be fairly dealt with ■and effectually guarded. Considerations of individual emolument can never be permitted to operate to the injury of these. But, whilst inventors are bound to diligence and fairness in their dealings with the public, with reference to their discoveries on the other hand, they are by obligations equally strong entitled to protection against frauds or wrongs practiced to pirate- from them the results of thought, and labor, in which nearly a lifetime may have been exhausted; the fruits of more than the
 
 viginti annorum lucubraiiones,
 
 which fruits the public are. ultimately to .gather. The Shield of this protection has been constantly interposed between the inventor and fraudulent spoliator by the courts, in England, and most signally and effectually has this been done by this court, as is seen in the eases of Pennock & Sellers
 
 v.
 
 Dialogue, (2 Peters, 1,) and of Shaw
 
 v.
 
 Cooper, (7 Peters, 292.) These may be regarded as leading cases upon the questions of the abrogation or relinquishment of patent privileges as resulting from avowed intention, from abandonment or neglect, or from use known and assented to.
 

 Thus, in the former case, the court, on page 18, interpreting the phras
 
 e, not known or used before the application for a patent,
 
 
 *330
 
 make the inquiry,
 
 ‘
 
 what is the true meaning of the words
 
 not
 
 .
 
 known or used,’
 
 &c. They cannot mean that the thing invented was not known or used before, the application by the inventor himself; for that would be to prevent the only means of his obtaining a patent. The use as well as the knowledge of his invention must be indisputable, to enable him to ascertain its competency to. the end proposed, as well as to perfect its component parts. The words, then, to have any rational interpretation, must mean,
 
 not known or used.by others
 
 before the application. But how known or used ? If-it were necessary, as it well might be, to employ others to assist in the original structure or use by the inventor himself, or if before his application his invention
 
 should be pirated by another, or used without his consent,
 
 it can scarcely be supposed that the Legislature "had within its contemplation such knowledge or .use.” Further on in' the same case, page 19, the court say, “ If an inventor should be permitted to hold back from the knowledge of the public the secrets of bis invention, if he should for a long period of years retain the monopoly, and make and sell his invention publicly, and thus gather the whole profits of it, relying on his superior skill and knowledge of the structure, and then, and then only, when the danger of competition should force him to secure the exclusive right, he should be allowed to' take out a patent, and thus exclude the public from any further use than what would be derived under it during his fourteen years, it would materially retard the progress of science and the useful arts,- and give a premium to those who should be least prompt to communicate their discoveries.” In Shaw
 
 v.
 
 Cooper, (7 Peters,) this court, on page 319, in strict coincidence with the decision in 2 Peters, say, “The knowledge or use spoken' of in the statute could have referred to the_ public only, and cannot be applied to the inventor himself; he must necessarily have a perfect knowledge of the-thing invented and its use, before he can describe it, as by law he is required to do preparatory to the emanation of a patent. But there may be .cases in which the knowledge" of "the invention
 
 may be surreptitiously obtained,
 
 and communicated to the public, that do not atfect the right of the inventor. Under such circumstances,
 
 *331
 
 no presumption can arise in favor of an abandonment of the right to the inventor to the public, though an acquiescence on his part will lay the foundation for such a presumption.”
 

 The real'interest of an inventor with respect to an assertion or surrender of his rights under the Constitution and laws of the United States, whether, it be sought in his declarations or acts, or in forbearance or neglect to speak or act, is an inquiry or conclusion of
 
 fact,
 
 and peculiarly within the province of the iury, guided by legal evidence submitted to them at the trial.
 

 Recurring now to the instruction from the judge at circuit in this casé, we consider that instruction to be in strict conformity with the principles hereinbefore propounded, and with the doctrines of this court, as declared in the cases of Pennock
 
 v.
 
 Dialogue and Shaw
 
 v.
 
 Cooper. That instruction diminishes or excludes no proper ground upon which the conduct and intent of the plaintiff below, as evinced either by declarations or acts, or by omission to speak or act, and on which also the justice and integrity of the conduct of the defendants were to be examined and determined, it submitted the conduct and intentions of both plaintiff and defendants to the jury, as questions of
 
 fact
 
 to be decided by them, guided simply by such rules of law as. had been, settled with reference to issues like the one before them; and upon those questions of fact thé jury have responded in favor of the plaintiff below,, the defendant in error. "We think that the rejection by the court of the prayers offered by the defendants at the trial was warranted by the character of those prayers, as having a tendency to narrow the inquiry by the jury to an imperfect and partial view of the case, and to divert their minds from a full comprehension of the merits of the controversy. The decision of the Circuit Court is affirmed, therefore, with costs.