## MATTHES *v.* BURT.

PATENTS; INTERFERENCE; CONCEALMENT AND SUPPRESSION OF INVENTION; ESTOPPEL.

Deliberate concealment by the junior party to an interference of an invention from the public for two and a half years, with no change of such policy of concealment until he obtained knowledge of the senior party's efforts in the same field, during which time the senior party, with no knowledge of his rival's invention, worked diligently to perfect the invention and to put his product on the market, and applied for a patent, will render the junior party's rights based upon his prior construction of an operative device, subordinate to the right of the senior applicant, who, within the policy of the law, is the first to invent (following *Mason* v. *Hepburn*, 13 App. D. C. 86; *Warner* v. *Smith*, 13 App. D. C. 111; *Re Mower*, 15 App. D. C. 144; and *Thomson* v. *Weston*, 19 App. D. C. 373) ; and the fact that the senior party's application had not ripened into a patent before the filing of the junior party's application will not affect the cause.

No. 258.    Patent Appeals.    Submitted November 9, 1904.    Decided December 6, 1904.    .

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                        *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. C. C. Linthicum* and *Messrs. Bacon & Milans* for the appellant.

*Mr. Philip Mauro, Mr. S. T. Cameron, Mr. Reeve Lewis,* and *Mr. C. A. L. Massie* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

This is an interference case having the following issue:

"1. A mold comprising a tubular body open at both ends for the entrance of dies, and provided between its ends with transversely movable plugs having ends adapted to extend into the bore of the tubular body, and to engage a mass of plastic compressible material and retain the same therein.

"2. A mold comprising a tubular body open at both ends and provided between its ends with diametrically opposed orifices perpendicular to the axis of said tubular body, and plugs movable transversely in said orifices and adapted to extend into the interior of said tubular body, and to engage a mass of plastic, compressible material placed therein, and to retain the same in a fixed position.

"3. As means for producing the central, or core-like portion of the composition ball, a tubular or female mold or die, provided with diametrically opposite, movable core plugs, the ends of which may be set to protrude within bore of the hollow die, to produce in the molding operation cavities to receive number inserts, and capable of being withdrawn from within the bore of said die at pleasure; also a pair of male dies adapted to enter the opposite ends of the said female die, and to mold or compress into shape the central core-like portion of the ball, as hereinbefore specified; the whole arranged and operating so that, after the molding of said central portion of the ball, the cores which produce the cavities for the inserts may be withdrawn from said cavities, and the molded ball portion then withdrawn from the mold.

"4. As means for molding a pool ball, the combination, with a tubular or female die having radially movable core plugs, of two pairs of male dies, one pair of which is adapted to form, in conjunction with the core plugs, the middle portion of the ball with cavities to receive inserts, and the other pair of which is adapted to form segmental body portions and compress them upon said middle portion."

The Examiner of Interferences decided in favor of Julius H. Matthes. His decision was reversed by the Examiners-in-Chief,—one member dissenting. From the final decision of the Commissioner in favor of Alonzo L. Burt, Matthes has prosecuted this appeal.

Burt's application was filed December 5, 1901, and that of Matthes on February 19, 1902.

Under a preliminary statement alleging the making of sketches on or about June 1, 1899, and reduction to practice by making a full-sized operative die or mold between the first and the middle of June, 1899, Matthes's evidence tended to show that he had made the mold in June, 1898, and manufactured several dozen of pool balls therewith immediately after this construction.

The mold produced as the one then constructed is cracked and no longer serviceable, but shows the invention of the issue.

Each of the tribunals of the Patent Office has accepted this mold as a reduction to practice, and awarded credibility to the evidence tending to show its construction and experimental use in the manufacture of pool balls in June, 1898. By reason of the date alleged in the preliminary statement the benefit of this reduction to practice has been limited to June, 1899. This is unimportant, however, as it antedates Burt's reduction to practice.

Notwithstanding these conclusions, we are constrained to say that Matthes's explanation of his mistake in the allegation of the date of this construction is not in every respect satisfactory. In view, however, of the ground upon which the final decision in favor of Burt has been rested, it is unimportant to review the evidence on this point, or to consider it along with other circumstances on which it is contended, on behalf of Burt, that this

early experimental construction and use failed to demonstrate the efficiency of the model and the utility of the invention, whereupon it was laid aside and abandoned until information of Burt's successful exploitation of a similar invention caused it to be taken up again.

We will assume, therefore, as found by the Commissioner and the other tribunals, that Matthes made a full-size, operative model and tested it in June, 1898, to his own complete satisfaction, as well as that of the officers of the Brunswick, Balke, Collender Company, by whom he was employed.

The mold thus made and tested was kept in the factory, where it was concealed from the public, and known only to two or three employees who had helped to operate it. Some of the balls of this experimental manufacture were sold with the general stock, but it was admitted that there was nothing in their appearance to distinguish them from balls made in the old way; and no record of them was kept and no attempt made to determine how they might bear the strain of common use in comparison with the other balls, which was a thing that Matthes seems to have regarded as uncertain. Instead of proceeding to make balls for the trade with the newly invented mold, it was laid aside and the manufacture was continued in the old way. Notwithstanding he had caused search to be made in the Patent Office in 1899 and discovered that there was, apparently, nothing in the way of securing a patent for his invention, Matthes filed no application until February 19, 1902,—some time after he had acquired knowledge that Burt was manufacturing and selling to the trade balls made with a similar device. During this interval of more than 3½ years the public had no means of acquiring knowledge of his invention.

In the meantime Burt, without knowledge of Matthes's discovery, was at work. He claims to have conceived the idea in 1896, but is limited by the allegations of his statement to its disclosure in 1899. Without inquiry into his evidence, it is sufficient to say that he made disclosure of his invention early in 1901, and that a mold in accordance therewith was made in the factory where he was then employed in Milburn, New Jersey. As early

as August, 1901, the new mold was in operation turning out balls for sale to the trade, and between that date and the time of filing his application, December 5, 1901, a great number (probably thousands) of the new balls were manufactured and sold.

It is clear that early in December, 1901, Matthes received full knowledge, through men lately employed in the Burt factory, concerning the successful use of Burt's construction and the sale of its product. The circumstances relating to the employment of these men by the Brunswick, Balke, Collender Company, of Chicago, where Matthes was at work, need not be considered.

The only fact of importance is the information which they gave to Matthes.

For reasons that have been sufficiently stated in the decisions of the Examiners-in-Chief and the Commissioner, the evidence of Matthes tending to show an intention to apply for a patent in 1899, and the failure to carry it into execution, through the neglect of his solicitor, is unsatisfactory and not entitled to any weight. In the light of the surrounding circumstances and conditions, Matthes's attempt to excuse his failure to utilize his invention, on the ground of the waste of material involved in the use of the improved mold, is also entitled to no serious consideration. Having, then, completed the invention and satisfied himself of its utility, as claimed, Matthes deliberately concealed it, suppressing its use and withholding it from the public. How long he might have pursued this policy with no rival in the field is, of course, conjectural; but it is certain that he showed no substantial intention of change of policy until he had obtained definite knowledge of Burt's exploitation of the same invention. On the other hand, Burt, having no knowledge of Matthes's discovery, and encouraged and induced by the apparently unoccupied field, went diligently to work to perfect his invention and to put its product upon the market. He not only sold this product to the trade in large quantities, but promptly applied for a patent. On this state of facts, the Commissioner held that Matthes's right had become subordinate to that of Burt who was the first to invent in accordance with "the true policy and ends of the patent laws" as declared by the Supreme Court of the United States in

*Kendall* v. *Winsor,* 21 How. 322, 327, 328, 16 L. ed. 165, 167, 168.

His decision we think was correct.   The facts bring the case within the principle of decisions heretofore given by this court on appeal from the Commissioner of Patents.   *Mason* v. *Hepburn,* 13 App. D. C. 86; *Warner* v. *Smith,* 13 App. D. C. 111, 115; *Re Mower,* 15 App. D. C. 144, 154; *Thomson* v. *Weston,* 19 App. D. C. 373, 379.

They present no question of diligence in respect of adapting and perfecting the invention as beween rival claimants; or of reasonable excuse for delay on other grounds relieving that delay of the imputation of deliberate concealment; or where delay is a potent circumstance in determining whether the tests made at a remote period amounted to a complete reduction to practice. For these reasons the decisions cited on the brief of the appellant are not applicable.   Among these, see *Yates* v. *Huson,* 8 App. D. C. 93; *Christie* v. *Seybold,* 5 C. C. A. 33, 6 U. S. App. 520, 55 Fed. 69; *Esty* v. *Newton,* 14 App. D. C. 50, 53; *Christensen* v. *Noyes,* 15 App. D. C. 94; *McBerty* v. *Cook,* 16 App. D. C. 133, 139; *Brown* v. *Blood,* 22 App. D. C. 216; *Oliver* v. *Felbel,* 20 App. D. C. 255, 261; *Roe* v. *Hanson,* 19 App. D. C. 559, 564: *Reichenbach* v. *Kelley,* 17 App. D. C. 333, 344.

That Burt's application had not ripened into a patent before Matthes filed his does not substantially affect the application of the cases of *Mason* v. *Hepburn,* 13 App. D. C. 86, and others *supra.*   Whilst the possession of a patent makes, ordinarily, a stronger case in favor of the holder, the doctrine in respect of concealment by one earlier to invent does not necessarily depend upon that fact.   In *Warner* v. *Smith,* 13 App. D. C. 111, 115, in which the reasons for that doctrine are explained at length, the later inventor  had not received a patent.

For the reasons given the decision of the Commissioner of Patents will be *affirmed, and the proceedings in this court certified to him, as required by the law.   It is so ordered.*