HANDY THINGS CO. et al. v. TUCKER & DORSEY MFG. CO.

(Circuit Court of Appeals, Seventh Circuit. January 10, 1911. Rehearing Denied April 11, 1911.)

No. 1,667.

PATENTS (§ 328*)—PRIOR PUBLIC USE—VEGETABLE AND FRUIT SLICE AND SLICER.

    The Regnier patents, No. 678,514, for a vegetable or fruit slice and method of making the same, the slice being corrugated on both sides in such manner that numerous perforations are made without waste of ma-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

terial, and No. 744,107, for a slicer to produce such slices, are both void for prior public use for more than two years prior to the applications.

Appeal from the Circuit Court of the United States for the District of Indiana.

Suit in equity by the Handy Things Company, Eugene S. Regnier, and Louisa M. Richards against the Tucker & Dorsey Manufacturing Company. Decree for defendant, and complainants appeal. Affirmed.

The decree from which this appeal is brought dismisses (for want of equity) the appellants' bill, charging infringement of two patents, Nos. 678,514 and 744,107, issued for alleged inventions of the appellant E. S. Regnier.

No. 678,514 was granted July 16, 1901, on an application filed October 11, 1900, for "improvements in vegetable, fruit, or other slice and method of making the same." The specification and drawings show the "apparatus for producing the slices," together with views of the products, as slices corrugated on both sides with perforations at various places; and the invention is thus described:

"I produce an entirely new product, which is novel, ornamental, and useful, which will not pack nor mat with other slices, which may be used for making salads from vegetables or fruits, or making Saratoga chips from potatoes, giving to the slice a very large area for the action of the hot grease, which makes a very crisp chip. This result is also brought about without wasting any of the material, because the material cut out of the holes in each slice simply forms a part of the next slice cut and is not cut out and wasted."

The claims are:

"1. The method of making perforated vegetable or other slices, which consists in cutting in the opposite sides of the slice intersecting corrugations, the corrugations in one side being disposed at an angle to the corrugations in the other, substantially as described.

"2. The method of making perforated vegetable or other slices, which consists in successively subjecting the vegetable to the action of a corrugated cutter and partially rotating the vegetable about an axis perpendicular to the general plane of said cutter after each cutting operation, whereby successive slices are produced, said slices having in their opposite sides intersecting corrugations disposed at an angle to each other, substantially as described.

"3. The method of making corrugated vegetable or other slices, which consists in first subjecting the vegetable to the action of a corrugated cutter, whereby the face of the vegetable is corrugated, then partially rotating the vegetable about an axis perpendicular to the general plane of its corrugated face, and then again subjecting the vegetable to the action of the cutter, and thereby producing a slice having in its opposite sides intersection corrugations resulting in perforations, substantially as described.

"4. As a new product, a vegetable or fruit slice having corrugations or flutes in the opposite faces thereof extending at an angle to each other, said corrugations intersecting each other, so as to form perforations in the slices, substantially as described."

No. 744,107 was granted November 17, 1903, on application filed February 10, 1900, for "improvements in slicers," with the apparatus described as in the foregoing patent. It consists of a corrugated knife and a guide-board mounted between the side-bars of a frame—the guide-board corrugated on one side and plain on the other face, and pivoted, so that it may be inverted as desired and clamped in place. The specification states:

"This invention relates to improvements in that class of devices especially designed for slicing vegetables, fruits, etc., such as potatoes, cucumbers, apples, and the like; but it is especially adapted for slicing potatoes into novel forms for frying or for making 'Saratoga chips,' whereby a new product of both domestic and commercial value is produced.

"The primary object of this invention is to enable the production of a slice, whether of vegetable or fruit, that will be novel and ornamental in appearance, that will expose the maximum superficial area, whether it be intended for cooking or drying, and that will not pack or mat while cooking or drying, whereby it insures the thorough cooking or drying of each slice of a batch

and the production of a product novel both in shape and appearance, as well as in characteristics.

"Another object of my invention is to enable the production of either perforated or imperforate, fluted, or corrugated slices, as may be desired, at the same cost both of time and material, with no loss of the vegetable or fruit being sliced and with no more labor or skill than is involved in the production of plain slices by the slicers now commonly employed.

"Another object is the ready production of corrugated or fluted imperforate slices having their opposite faces parallel or perforated slices having their opposite faces corrugated or fluted at an angle to each other, manipulating the vegetable upon the slicer in one or another of two ways, as hereinafter described."

And the claims are:

"1. In a slicer, the combination of a cutter, having longitudinal corrugations and a guide-board, said cutter and guide-board being so disposed with relation to each other that the plane of the working surface of the guide-board and a second plane touching the lowest points of the corrugations at the cutting edge of the cutter, are separated by a distance which is less than the depth of said corrugations, substantially as described.

"2. In a slicer, the combination of a cutter, having longitudinal corrugations and a guide-board, having a flat working surface, said cutter and guide-board being so disposed with relation to each other that the plane of the working surface of the guide-board and a second parallel plane touching the lowest points of the corrugations at the cutting edge of the cutter, are separated by a distance which is less than the depth of said corrugations, substantially as described.

"3. In a slicer, the combination of a cutter, having longitudinal corrugations and having also parallel upper and lower surfaces, and a guide-board, having a flat working surface, said cutter and guide-board being so disposed that the plane of the working surface of the guide-board and a second plane parallel therewith and with the cutter and touching the lowest points of the corrugations, are separated by a distance which is less than the depth of said corrugations, substantially as described.

"4. In a slicer, the combination of a cutter, having longitudinal corrugations, a cutter-board on which said cutter is mounted, said cutter-board having corrugations corresponding with and fitting in the corrugations of the cutter, the end of the cutter being extended some distance beyond the cutter-board and the cutter and guide-board being so disposed with relation to each other that the plane of the working surface of the guide-board and a second parallel plane touching the lowest points of the corrugations at the cutting edge of the cutter are separated by a distance which is less than the depth of said corrugations, substantially as described.

"5. In a slicer, the combination of a cutter having longitudinal corrugations, an invertible guide-board disposed in operative relation thereto, said guide-board having one of its faces plain and its opposite face corrugated, and means for fixing the guide-board with either of its faces uppermost, substantially as described."

Other facts bearing upon the issues are stated in the opinion.

L. M. Hopkins and Frank T. Brown, for appellants.
Arthur M. Hood and Chester Bradford, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The two patents in suit rest on an alleged invention of Regnier for slicing potatoes (and other vegetables or fruit), to produce a slice corrugated on both sides, in such manner that numerous perforations are made as well, without waste of material; and the utility of means and product is undoubted. Patent No. 678,514 is aptly referred to as "the method and product patent"—having three so-called "method" claims and one for "a new product"—and No. 744,107 is for the apparatus

or "slicer." The slicer consists of a corrugated knife and guide-board, mounted in a frame for use as a hand slicer; with the guide-board having one face plain and the other corrugated, so pivoted that one or the other face can be turned up, adjusted, and clamped for different uses. For its main use, in producing the above-mentioned slices, the plain face of the guide-board is employed and properly adjusted in front of the knife; the operator holding the potato for slicing on the board. When the first cut is made, the operator turns the potato (say a quarter turn) to make the second cut at another angle, so that the corrugations left by the first cut are perforated in their valleys, and each slice in such method becomes both corrugated and perforated, with its integrity preserved.

The defenses raised by answer and evidence were: (1) Want of patentable invention, either for anticipations or prior public use; and (2) noninfringement by the appellee of the patent device. It does not appear in the transcript which defense was upheld for dismissal of the bill; but it may well be assumed that the trial court was convinced, under the established facts, that neither patent was valid. These twofold issues are plainly presented, with no complications of fact in the way of their solution: (a) Whether either specification discloses an improvement of patentable novelty in the vegetable slicing art—in product, or means, or both—and, if so, (b) whether either patent is valid, under the undisputed evidence of prior public use; and the appellee's contention that its device is not substantially identical with that of the patent, does not appear to be tenable. For the tests of patentability, we believe extended discussion to be unnecessary of the two grants and sets of claims separately, in reference to the evidence, for the reason that both branches thereof are applicable to the "method and product" patent, No. 678,514, under any admissible interpretation of the claims, if it be assumed that such claims are otherwise valid, for the operation or function of the apparatus of No. 744,107.

Slicers for vegetables and fruit, either for rough or fancy slicing, are old, well-known means, and, among the patent·appliances in evidence, pertinent references are: No. 118,944, James & Currier (1871), for vegetable slicers; No. 184,471, Iske (1876), for vegetable cutter and slicer; No. 446,379, Dana (1891), for fruit and vegetable cutter; No. 527,253, Struble & Turner (1894), for potato slicer; No. 597,-009, Mabbett (1898), for cutting and slicing vegetables, etc.; design No. 30,366, Hill (1899), for corrugated blade of vegetable cutter; German patents: No. 236,644, of Podlipsky (1883), and No. 90,072, of Rassmus (1895), for beet cutters. Use of the corrugated cutter, when corrugated slices were required, was not only well known, but appears in several of these patents, framed with a guide-board, whereof the face is plain in instances and corrugated in others. Mabbett (No. 597,009) shows a corrugated cutter, with two interchangeable guide-boards, one plain and the other corrugated. So the apparatus device of the appellants' patent, with its corrugated knife and adjustable guide-board mounted in a frame, is not differentiated (in the sense of the patent law) from Mabbett and other references, unless inven-

tion may rest, as appellants contend, on these features: (a) Its single guide-board, having one face plain and the other corrugated, pivoted to make it reversible for alternative use, instead of two adjustable guide-boards shown by Mabbett for like use; and (b) adjustment disclosed of the guide-board to the knife (as described in appellants' brief) making the space between them "less than the depth of the corrugations," so that perforations result from successive cuts when the potato is turned by hand.

We are not impressed with either of these elements thus introduced as involving patentable invention in the apparatus, but that each was an obvious expedient, without substantial departure from the prior conceptions. Whenever perforation of the first corrugations was desired, the adjustment and change in angle of the cut was within the ready adaptability of such means; and this, irrespective of the actual adaptation by Hill, to be considered in another phase. Thus the claims of invention therein, were, as we believe, rightly rejected by the primary examiner, in the Patent Office (as exhibited in the file wrapper) on the references mentioned.

The independent device and use of the witness Hill, however, as clearly defined by the convincing and uncontroverted testimony, we believe must defeat both of appellants' patents, under the facts in evidence of procrastination and public use on the part of the patentee, although it be assumed for such consideration that Regnier's conception was both meritorious and prior.

The original application of Regnier was filed February 10, 1900, while Hill completed his means, substantially identical, in the "fall of 1898," and filed his application for a design patent on his form of corrugated knife therein February 6, 1899. From the completion in 1898, it is not open to question that Hill's combined means of knife, guide-board, and frame were in public use, producing the corrugated and perforated potato slice described in Regnier's subsequent patents. The appellants' testimony tends to prove completion by Regnier of an earlier slicer in 1897, with which he successfully and repeatedly made the form of slice described in patent No. 678,514. This slicer, however (as explained by the witness and shown by an exhibit device), did not have the improvements on which the present claim of patentability rests; otherwise, the conceded facts would leave slight ground for the contention that use of the device was experimental only. It was submitted to a solicitor, with application for a patent in view, but no action appears to have been taken by such solicitor (now deceased) beyond approval of the device and attempts to procure its adoption by manufacturers. Regnier testifies that he proceeded to work out improvement, and perfected the patent apparatus about June, 1898, thus anticipating Hill, and that he frequently operated it, with complete success throughout, although no application for patent was made until long after, in 1900.

The evidence throughout impresses us to furnish no reasonable excuse for this delay and intermediate (conceded) use of the perfected device, to preserve the right to a patent for any supposed invention therein. Simplicity of means and complete operation, as

alleged, in June, 1898, leave no excuse open for experimentation during such intervals, either in means or use; and the admitted frequent use—on the part of Regnier, members of his family, and others—in producing potato slices of undoubted value for domestic utility, plainly infers public use. Thus, if the above-mentioned device and use of Hill were anticipated in date by Regnier, they became public property through Hill's independent disclosure and dedication, pending such conduct of Regnier indicative of abandonment, and we believe any (assumed) invention therein on the part of Regnier must be treated as abandoned and unpatentable, under the settled policy of the patent law. Kendell v. Winsor, 21 How. 322, 329, 16 L. Ed. 165; 5 Notes U. S. Rep. 850.

In reference to the method and product patent (No. 678,514), the production by the patentee in 1897, as stated, is deemed sufficient to establish public use for more than two years prior to the application, and excludes patentability, if otherwise allowable.

The decree of the Circuit Court, therefore, is affirmed.