# IN RE FRITTS.

PATENTS; PATENTABILITY; LACHES.

1. Where the invention disclosed in an application for a patent is such as to
   justify certain claims being made, but the applicant does not make
   them at the time but waits until patents subsequently granted em-
   bracing such claims have expired and then presents the claims, they

will be rejected on the ground of his laches.   While an applicant
may be legally justified in permitting his application to remain in
the Patent Office for so long a time, he must specifically and season-
ably assert his claims after the issuance of patents to others in order
that interferences may be declared and the issue of priority .de-
termined.   (Citing *Bechman* v. *Wood*, 15 App. D. C. 484, and *Brown*
v. *Campbell*, 41 App. D. C. 499.)

2. When the element of diligence or good faith in an applicant for a patent
is lacking, there is no valid reason for such a construction of the
patent laws as would effect an extension of the limited monopoly
granted upon prescribed conditions which include those very ele-
ments.

No. 973.   Patent Appeals.   Submitted May 12, 1915.   Reargued March 13,
1916.   Decided May 1, 1916.

HEARING on an appeal from the decisions of the Commis-
sioner of Patents rejecting certain claims in an application for
a patent.                                                 *Affirmed.*

The facts are stated in the opinion.

*Mr. John M. Coit* for the appellant.

*Mr. Robert F. Whitehead* for the Commissioner of Patents.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal [by Josephine H. Fritts, administratrix of
estate of Charles E. Fritts] from a decision of the Commis-
sioner of Patents disallowing certain claims of a patent appli-
cation.

The invention, to quote from the application which was filed
in 1880, relates to "an improvement in method and apparatus
for recording and reproducing pulsations or variations in
sounds, lights, and electrical currents."   The application was
prepared and prosecuted by the inventor up to the time of his
death, in 1905.   Subsequently, many additional claims were
presented by amendment.   After directing attention to the fact

that all of the claims are generic, the Examiner said: "This case has been pending in this office for over a third of a century, during that time very many devices have been invented by others without the aid of and knowledge of what this application discloses, because such application has been and still is preserved in secrecy, and these other devices since invented have taken their place in commercial relation, and this applicant now seeks the allowance of a breadth of claim which will enable him to lay tribute upon such subsequently produced devices. Specifically, there are claims included in this appeal which in terms will dominate the present moving-picture art. There are also claims which are presumed to have a broad scope in the photographic art. This applicant has also copied claims from patents some of which have long since expired, while others are still in force but which have been issued many years ago. *    *    * It is thought there is a want of equity in deliberately permitting these patentees to enjoy, undisturbed, their monopoly for the entire periods of their patents, and then, when the subject-matter of their claims has become public property, advancing such claims anew. This acquiescence, during the entire life of these patents in the exercise by the patentees of their rights held under such patents, constitutes an abandonment of the invention covered by these claims of such patents."

While the Examiner allowed many claims, he disallowed many more, and an appeal was taken to the Board of Examiners in Chief. Speaking of the claims that had been copied from expired patents, the Board said: "The invention in question was disclosed in the application, as originally filed, but no claims were presented thereto until after the patents above referred to had run their full time and expired. If the applicant had made claims to the invention in question while the applications of Cox and Gibboney were pending, or as soon as possible after the issue of these patents, the office would have been in a position to declare an interference, and if the applicant had proved his case these patents would not have issued. *    *    * The one point which stands out before all else in this case, and

distinguishes it from any of the decisions cited by the applicant in support of his contentions, is that, although he had constructive notice of the claims of other inventors by the grant of patents, he failed to remember that he had ever made such invention, and never presented any claim to inventorship until after the terms of such patents had expired and the invention had vested in the public. In our opinion it would be contrary to the public policy under these circumstances to grant to this applicant a second monopoly upon the invention for seventeen years, and compel the public to pay a second time for that which is already in their possession, and we must hold that the inventor is now estopped from obtaining a patent thereon."

On appeal to the Commissioner, the decision of the lower tribunals was reversed as to fifty claims and sustained as to sixty other claims; namely, as to claims 5, 8, 43, 53; 68 to 71, inclusive; 75 to 86, inclusive; 104 to 111, inclusive; 113, 115, 117; 119 to 131, inclusive; 138, 139, 140; 144 to 147, inclusive; 168 to 173, inclusive; 176, 185, 186 and 187. The Commissioner sustained the ruling of the lower tribunals that applicant was estopped to present claims copied from expired patents. He disallowed other claims on the ground that they were broader than applicant's invention; others on the ground that they were misdescriptive of his invention and contained limitations not disclosed in his application; and others because they were anticipated by the prior art.

The consideration of these claims by the three tribunals of the Patent Office is so full and satisfactory that we shall confine this opinion to a discussion of the legal proposition presented, namely, the measure of an applicant's duty to preserve his rights to an invention disclosed but not claimed, where a patent specifically covering such invention issues.

We frequently have had occasion to observe that inventors are quite prone to overlook the fact that "the true policy and ends of the patent laws enacted under this government are disclosed in that article of the Constitution, the source of all those laws, viz., 'to promote the progress of science and the useful arts,'

contemplating and necessarily implying their extension, and increasing adaptation to the uses of society." *Kendall* v. *Winsor,* 21 How. 322, 328, 16 L. ed. 165, 167. Other forms of monopoly are denounced by the law, and this form is protected for a given period of time for the public good. *Brown* v. *Campbell,* 41 App. D. C. 499. No one would contend that the reward to an inventor is anything more than an incident to the great object and purpose of the patent law. It was not the purpose of this law merely to promote the interests of an individual, but to offer him encouragement and compensation for a public service.

In *Kendall* v. *Winsor,* 21 How. 322, 16 L. ed. 165, above referred to, it was ruled that one who conceals his invention and uses it for his own profit is not entitled to favor if another person finds out and uses the invention. The court said: "The rights and interests, whether of the public or of individuals, can never be made to yield to schemes of selfishness or cupidity; moreover, that which is once given to or is vested in the public cannot be recalled nor taken from them. * * * It is the unquestionable right of every inventor to confer gratuitously the benefits of his ingenuity upon the public, and this he may do either by express declaration or by conduct equally significant with language,—such, for instance, as an acquiescence with full knowledge in the use of his invention by others; or he may forfeit his rights as an inventor by a wilful or negligent postponement of his claims, or by an attempt to withhold the benefit of his improvement from the public until a similar or the same improvement should have been made and introduced by others. Whilst the remuneration of genius and useful ingenuity is a duty incumbent upon the public, the rights and welfare of the community must be fairly dealt with and effectually guarded. Considerations of individual emolument can never be permitted to operate to the injury of these."

In *Miller* v. *Bridgeport Brass Co.* 104 U. S. 350, 26 L. ed. 783, there was involved a reissued patent, and the ground for the reissue was, of course, inadvertence and mistake in the original specification. The court said: "The only mistake suggested

is that the claim was not as broad as it might have been. This mistake, if it was a mistake, was apparent upon the first inspection of the patent, and if any correction was desired, it should have been applied for immediately.

"These afterthoughts, developed by the subsequent course of improvement, and intended, by an expansion of claims, to sweep into one net all the appliances necessary to monopolize a profitable manufacture, *are obnoxious to grave* animadversion." After suggesting that a patentee who desires to broaden his claims should be diligent in returning to the Patent Office, the court further said: "But it must be remembered that the claim of a specific device or combination, and an omission to claim other devices or combinations apparent on the face of the patent, are, in law, a dedication to the public of that which is not claimed. It is a declaration that that which is not claimed is either not the patentee's invention, or, if his, he dedicates it to the public. * * * Unnecessary laches or delay in a matter thus apparent on the record affects the right to alter or reissue the patent for such cause."

In *Bechman* v. *Wood,* 15 App. D. C. 484, it was ruled that if an inventor files in the Patent Office an application with a narrow claim for a specific device, but which he is entitled by amendment to broaden into a generic claim, he nevertheless is estopped so to do if, in the meantime, the right of another applicant has accrued to a narrow claim for a similar device which would be dominated by the broader claim of the first applicant.

While the questions involved in the foregoing cases were different from that now under consideration, we think the principle there announced applicable here; namely, that an inventor will not be permitted to take advantage of his own laches. Assuming, as we must, that the applicant in the present case was legally justified in permitting his application to remain in the Patent Office for so long a time, we can find no justification for his failure specifically and seasonably to claim inventions for which patents were regularly issued to others. Those other patentees, of course, had no knowledge of this applicant's claims. Even the Patent Office, with these specifications and claims

before it, was unaware of any interference in fact. We say this because, had the Patent Office entertained a different view, an interference would have been declared. When these patents issued, however, this applicant was bound to know whether they covered something which he already had invented; and he further was bound to know that unless he filed claims covering the subject-matter of those patents, a monopoly for seventeen years would be enjoyed by those patentees although, according to his present view, they were not entitled to it. He knew that, as a reward for making a useful or valuable invention, the law granted a monopoly for seventeen years, yet he deliberately stood by and permitted those patentees to exploit those inventions for the full statutory period, and now, when the financial returns will be far greater, he asks as a reward for his laches a second monopoly for a like term of years. The statement of the proposition carries its own answer. It was his duty, within a reasonable time after the issuance of those patents, to assert his claims thereto, to the end that an interference might be declared and the issue of priority determined. By failing to assert such claims, he must be held to have abandoned them.

In *Goodwin Film & Camera Co.* v. *Eastman Kodak Co.* 129 C. C. A. 575, 213 Fed. 231, relied upon by appellant, there was no failure on the part of the applicant to claim the subject-matter of the invention patented to another. On the contrary, the original applicant in that case had persistently claimed the subject-matter of that invention.

Monopolies are inherently obnoxious, and it is solely because of ultimate benefit to the public that a conditional form of monopoly is permitted an inventor. When the element of diligence or good faith in an applicant is lacking, there is no valid reason for such a construction of the patent laws as would effect an extension of the limited monopoly granted upon prescribed conditions which include those very elements. Inasmuch as even diligence and good faith do not entitle one to a monopoly upon a monopoly, it is not perceived why delay and the lack of good faith should do so.

The decision is affirmed.                    *Affirmed.*