**PIONEER HI–BRED INTERNATIONAL, INC., Plaintiff–Appellee,**

v.

**J.E.M. AG SUPPLY, INC.(doing business as Farm Advantage, Inc.), Farm Advantage, Inc., Larry Benz, Merle Pruett (doing business as Siouxland Seeds, Inc.), Kevin Wolfswinkel, Tim Kamstra, and Tom Eischen Seed and Chemicals, Defendants–Appellants.**

No. 99–1035.

United States Court of Appeals, Federal Circuit.

Jan. 19, 2000.

Rehearing En Banc Denied March 13, 2000.

Edmund J. Sease, Zarley, McKee, Thompte, Voorhees & Sease, P.L.C., of Des Moines, Iowa, argued for plaintiff-appellee. With him on the brief was Daniel J. Cosgrove. Of counsel on the brief was Herbert H. Jervis, Vice President & Chief Intellectual Property Counsel, Pioneer Hi–Bred International, Inc., of Johnston, Iowa.

Bruce E. Johnson, Lewis, Webster, Johnson, Van Winkle & DeVolder, L.L.P., of Des Moines, Iowa, argued for defendants-appellants. With him on the brief was S.P. DeVolder.

Warren D. Woessner, Schwegman, Lundberg, Woessner & Kluth, P.A., of Minneapolis, Minnesota, for amicus curiae American Intellectual Property Law Association.

Before MAYER, Chief Judge, NEWMAN and LOURIE, Circuit Judges.

PAULINE NEWMAN, Circuit Judge.

The defendants in this patent infringement suit are J.E.M. Ag Supply, Inc. (doing business as Farm Advantage, Inc.), Larry Benz, Merle Pruett (doing business as Siouxland Seeds, Inc.), Kevin Wolfswinkel, Tim Kamstra, and Tom Eischen Seed & Chemicals. The patents in suit, owned by Pioneer Hi–Bred International, Inc., are directed to plants and seed for new varieties of hybrid and inbred corn. The United States District Court for the Northern District of Iowa, denying the defendants' motion for summary judgment, ruled that seeds and plants grown from seed, that is, sexually reproduced plants, are patentable subject matter within the scope of 35 U.S.C. § 101.[1] On interlocutory appeal of the denial of summary judgment under 28 U.S.C. § 1292(b)[2], we affirm the district court's ruling.

## DISCUSSION

The district court held that the Supreme Court in *Diamond v. Chakrabarty*, 447 U.S. 303, 309, 100 S.Ct. 2204, 65 L.Ed.2d 144, 206 USPQ 193, 197 (1980), in stating that "Congress intended statutory subject matter to 'include anything under the sun that is made by man,'" (quoting S.Rep. No.1979 at 5 (1952)), confirmed that there is no basis in law for excluding living

[1.] *Pioneer Hi–Bred Int'l, Inc. v. J.E.M. Ag Supply, Inc.*, 49 U.S.P.Q.2d 1813 (N.D.Iowa 1998)

[2.] § 1292. Interlocutory decisions
(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order. . . .
Pioneer's petition for permission to appeal was granted by order dated October 27, 1998 (unpublished).

things, in this case seeds and seed-grown plants and parts thereof, from the subject matter included in § 101:

**35 U.S.C. § 101** Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

In *Chakrabarty* the Court dealt directly with this provision, responding to the arguments concerning patentability of Dr. Chakrabarty's new bacterium that was engineered to consume oil spills. The Court explained that the patent system is directed to the inventive works of mankind, and is not otherwise limited: "In choosing such expansive terms as 'manufacture' and 'composition of matter,' modified by the comprehensive 'any,' Congress plainly contemplated that the patent laws would be given wide scope." 447 U.S. at 308, 100 S.Ct. 2204, 65 L.Ed.2d 144, 206 USPQ at 197.

The defendants do not dispute that the subject matter of the patents in suit is within the scope of the *Chakrabarty* decision; their argument is that this decision does not apply to plants because plants were intended to be excluded from the patent system, as evidenced by the enactment of other statutes to provide protection to plants. Thus the defendants argue that seeds and seed-grown plants are excluded from Title 35 and may be protected only under the Plant Variety Protection Act, 7 U.S.C. § 2321 *et seq.*

The district court observed that the Patent and Trademark Office has been granting patents on new and unobvious varieties of seed-grown plants for at least fifteen years. In *In re Hibberd,* 227 USPQ 443, 444 (Bd.Pat.App & Interf.1985) the Board confirmed this PTO position, rejecting the argument that "the plant-specific Acts (PPA [Plant Protection Act] and PVPA

[Plant Variety Protection Act]) are the exclusive forms of protection for plant life covered by those acts." Although the defendants criticize *Hibberd,* the district court reached the same conclusion as did the Board. Indeed, the "increasing adaptation [of the patent laws] to the uses of society" was remarked by the Court a century earlier, in *Kendall v. Winsor,* 62 U.S. (21 How.) 322, 328, 16 L.Ed. 165 (1858).

The district court discerned no historical basis for excluding seed-grown plants from the scope of § 101, referring to the Supreme Court's explanation of why plants were not previously deemed to be patentable: first, plants are "products of nature," and second, plants could not be described with sufficient precision to satisfy the written description requirement of the patent statute. *Chakrabarty,* 447 U.S. at 311, 100 S.Ct. 2204, 65 L.Ed.2d 144, 206 USPQ at 198. Now, however, mankind is learning how to modify plants in ways unknown to nature. In addition, precision of description is no longer an insurmountable obstacle, due both to rules authorizing the deposit of new species in publicly available depositories, and advances in botanical understanding and analysis. The Court, cognizant of advances in science, has ratified the traversal of these past impediments to the compass of § 101. Although there remain the traditional categories that have never been viewed as patentable subject matter, *viz.,* laws of nature, natural phenomena, and abstract ideas, the policy underlying the patent system fosters its application to all areas of technology-based commerce.

On appeal, the defendants argue that the history of plant protection legislation shows that plants were never intended to be included in the patent statute. The defendants state that the existence of the PPA and the PVPA precludes application to plants of 35 U.S.C. § 101, citing the rule of construction that a general statute must

give way to a specific one. *See Fourco Glass Co. v. Transmirra Prods. Corp.,* 353 U.S. 222, 228–29, 77 S.Ct. 787, 1 L.Ed.2d 786, 113 USPQ 234, 237 (1957) ("specific terms prevail over the general in the same or another statute which otherwise might be controlling"). The defendants argue that the *Chakrabarty* decision can not overtake this rule of statutory construction, and thus that the Court's interpretation of § 101 does not apply to plants because there are statutes specific to plant protection.

The district court viewed *Chakrabarty* as resolving the uncertainty that previously existed as to the patentability of living things, and concluded that there is no impediment to reading all of the statutes concerning plant protection in harmony. *See Radzanower v. Touche Ross & Co.,* 426 U.S. 148, 155, 96 S.Ct. 1989, 48 L.Ed.2d 540 (1976) ("when two statutes are capable of co-existence, it is the duty of the courts ... to regard each as effective"). Thus the district court concluded that a person who develops a new plant variety may have recourse either to patenting under Title 35 or to registration under the PVPA.

The first statute that related specifically to plant protection was the Townsend–Purnell Plant Patent Act of 1930(PPA), codified at 35 U.S.C. §§ 161–164. This statute provided patent protection for asexually reproduced plants, and relaxed the written description requirement to accommodate the then-available modes of describing plant varieties:

§ **161.** Whoever invents or discovers and asexually reproduces any distinct and new variety of plant, including cultivated sports, mutants, hybrids, and newly found seedlings, other than a tuber propagated plant or a plant found in an uncultivated state, may obtain a patent therefor, subject to the conditions and requirements of this title.

The provisions of this title relating to patents for inventions shall apply to patents for plants, except as otherwise provided.

§ **162.** No plant patent shall be declared invalid for noncompliance with section 112 of this title if the description is as complete as is reasonably possible.

The claim in the specification shall be in formal terms to the plant shown and described.

The Patent and Trademark Office rules provide that the description requirement may be met by a color photograph, identification of the origin or parentage of the plant, and a detailed description of the plant's distinguishing characteristics. *See* MPEP '1605. Thus was resolved the principal concern that had inhibited access of plants to the patent system.

The 1930 Act did not include seed-grown plants. In 1970 the Plant Variety Protection Act established a form of protection for new varieties of seed-grown and tuber propagated plants. The Act does not include the extensive examination system that is applied to applications for patents, contains several provisions specific to agricultural crops, and is administered by the Department of Agriculture. The basic requirements are as follows:

7 U.S.C. § **2402(a).** The breeder of any sexually reproduced or tuber propagated plant variety (other than fungi or bacteria) ... shall be entitled to plant variety protection for the variety, subject to the conditions and requirements of this chapter, if the variety is—(1) new ... (2) distinct ... (3) uniform ... and (4) stable....

The defendants point out that at the time of enactment of the PVPA Congress believed that seed-grown plants were not included in the patent statute, and argue that '101 can not now be interpreted as available to seed-grown plants, when Con-

gress believed otherwise. A similar argument was presented by Justice Brennan in his dissent from the *Chakrabarty* decision. Dissenting opinions are often helpful in showing positions that were not adopted by the court. However, they are not the law.

The Court in *Chakrabarty* responded to the objection to patenting living things by stating that "Congress is free to amend § 101 so as to exclude from patent protection organisms produced by genetic engineering.... Or it may choose to craft a statute specifically designed for such living things." 447 U.S. at 318, 100 S.Ct. 2204, 65 L.Ed.2d 144, 206 USPQ at 201. The defendants argue that this is what Congress did in the PVPA. However, the PVPA does not purport to remove plants from the patent statute. Neither Congress nor the courts excluded new plant varieties from the patent statute; the enactment of the PVPA did not effect such an exclusion.

The defendants also object that Pioneer has obtained patents under Title 35 as well as certificates under the PVPA, and state that these statutes are in conflict. The district court observed, correctly, that the asserted conflict is simply the difference in the rights and obligations imposed by the two statutes. It is not unusual for more than one statute to apply to a legal or property interest. For example, an ornamental design may qualify for protection under both copyright and design patent law. The fact that laws are of different scope does not invalidate the laws.

The defendants cite *Imazio Nursery, Inc. v. Dania Greenhouses,* 69 F.3d 1560, 36 USPQ2d 1673 (Fed.Cir.1995), for its explanation of the scope of the PPA and the PVPA. At issue in *Imazio* was the meaning of the term "variety" as used in the PPA, and the resulting scope of protection afforded by that act. There was no issue in *Imazio* of the scope of § 101 or its relationship to either the PPA or the PVPA.

The defendants also argue that the specifications of Pioneer's patents are not enabling; they criticize the written description and the utility of the deposits, and generally challenge validity. These issues were not decided by the district court, and are not before us. We have carefully considered all of the arguments presented; they do not show error in the district court's ruling, and they do not overcome the *Chakrabarty* decision's confirmation of the inclusion in § 101 of the subject matter of the patents in suit.

We conclude that patentable subject matter under 35 U.S.C. § 101 includes seeds and seed-grown plants.

*AFFIRMED.*

Costs to Pioneer, Fed. Cir. Rule 39(a).