**RHINEVAULT v. PFIESTER.**

Patent Appeal No. 3151.

Court of Customs and Patent Appeals.

May 29, 1933.

John Boyle, Jr., of Washington, D. C., for appellant.

Allen & Allen, of Washington, D. C. (C. Russell Riordon and Charles E. Riordon, both of Washington, D. C., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office in an interference proceeding involving two counts taken from Pfiester's patent, issued June 25, 1929, the application for which was filed on March 30, 1928, and an application of Rhinevault filed October 5, 1929.

The invention relates to blocks in square form for parquetry flooring. The squares are formed of short pieces of tongued and grooved flooring, arranged side by side in tongue and groove engagement and bound together by metallic strips or splines sunk within aligned grooves across the ends of the blocks. The metal splines hold the pieces in a rigid assembly for shipping, handling, and laying into floor, ceilings, or walls. The blocks are usually of hardwood, and short waste or scrap pieces may be used in this manner advantageously.

The two counts involved follow:

"1. A composite block composed of pieces of lumber having the grain of each piece in alignment one with another, and with tongue and groove connections uniting the individual pieces together, said composite block having lateral edge grooves with metal cleats inserted within the grooves, said cleats being of such width as to provide reinforcement for the thin overhanging portions or the pieces at the ends thereof provided with grooves.

"2. A composite block composed of pieces of flooring having end grooves and being bound together with metal cleats at end edges thereof, said cleats being countersunk within the end grooves of the pieces, said cleats being of such width as to support overhanging portions of the pieces adjacent the end grooves."

There is no disagreement between the parties as to the dates claimed, although there is sharp disagreement as to the effect in law which shall be given to the happenings which occurred on the admitted dates.

The Examiner of Interferences held that Pfiester conceived the invention October 5, 1927, and constructively reduced the same to practice by filing his application on March 30, 1928, and that Rhinevault is entitled to June 28, 1927, for conception, and to his filing date of October 5, 1929, for constructive reduction to practice; that neither party had reduced the invention to practice prior to their respective filing dates, since he concluded that making one or more of the blocks without testing it under conditions of use was not a reduction to practice; and that although Rhinevault was first to conceive he did not reduce to practice for more than a year subsequent to the constructive reduction to practice of Pfiester. He also held that there was no excuse shown in the record for Rhinevault's long delay in filing his application, and that he had not sustained the burden of proof resting upon him of establishing his case beyond a reasonable doubt.

The Board of Appeals concurred in the finding of the dates by the Examiner of Interferences, except that it concluded that Rhinevault's construction of the blocks and the hand tests given them were a reduction to practice, and that such reduction to practice occurred during the summer of 1927, which was prior to Pfiester's date of conception on October 25, 1927. Concerning Rhinevault's reduction to practice, the board said: " * * * Exhibits 1 and 9 are of the usual or full size of parquette blocks and in every way as fully complete as they would be made and sold commercially. The three pieces of tongued and grooved flooring are very rigidly and securely held together in perfect alignment. They resist separation by any ordinary pulling force applied manually and would obviously stand any amount of handling during shipment and application to the floor. Parquette blocks made on this principle of uniting several pieces was a well established subject of invention before the parties here involved entered the field. We consider the problem of making such block fully solved when Rhinevault made Exhibits 1 and 9. It appears to us to be conclusive on mere inspection of these exhibits that they would stand shipment and application to the mastic foundation and remain fixed as well as any prior composite blocks. The tongue and groove operative on all four sides as well as the metal spline and other means would serve to hold them in place in the floor when once applied. There can be no doubt but that such rigid block would be fully satisfactory. We regard it as being of that type of device not needing further test that can be given to it manually and by inspection."

The Board of Appeals awarded priority to Pfiester on the ground that Rhinevault had forfeited his invention under the doctrine of Mason v. Hepburn, 13 App. D. C. 86, since it concluded that after his reduction to practice in the summer of 1927, his invention was laid aside and apparently forgotten until he filed his application October 5, 1929. Concerning this phase of the case the board said: "Considering the comparative simplicity of the device here involved, there appears to be no reasonable explanation of the long delay by Rhinevault from the time he reduced the invention to practice in the summer of 1927 until October 5, 1929, before applying for a patent. During this delay Pfiester had made the invention and in good faith applied for and received his patent, thereby placing the invention before the public."

The record shows, among other things, that about 1924 or 1925, the E. L. Bruce Company, appellant's assignee, which was a manufacturer of lumber of different kinds, started experimental work looking to the manufacture of wooden blocks; that it did manufacture and sell blocks represented by Exhibit 6, which does not meet the requirements of the counts involved; that it selected the S. A. Woods Machine Company of Boston to make the necessary machinery for it and sent samples of its strip flooring to the W. B. Mershon Company, Saginaw, Mich., a subsidiary of the Woods Company, where Rhinevault was employed; that Rhinevault was, by his company, assigned to making the blocks, and made Exhibits 1 and 9, meeting the requirements of the counts, some time in the spring or summer of 1927; that one of the blocks he made was mailed to the Bruce Company and one was retained by Rhinevault; that Rhinevault disclosed his invention to one Pelkey, a fellow employee, who held the block in the vise while Rhinevault pressed the splines at both ends; that Rhinevault also disclosed the invention to one Mason, a draftsman for the Mershon Company, some time in May, 1927; that one of the members of the Bruce firm received the block in the early part of July, 1927; that the block was tested by Rhinevault in order to note the holding qualities of the splines and also by attempting to bend them by hand; that he also tested them further by attempting to see how much of a pull it would take to pull the different pieces off the block, and also dug out a couple of the splines from the end grooves in order to learn how firmly they were

gripping the edges of the grooves. The record makes it clear that the three pieces of wood are splined together for the purpose of holding the individual slats in proper relationship in process of manufacture, in storage in the warehouse, in transit, and until the completed block is laid on the floor, and that the invention has practically no other purpose, although it might add a little in strength, but that this purpose was regarded as negligible; that the Bruce Company made no test other than a "practical examination of the blocks to see if they would be supported as a unit in accordance with the function of the spline"; that the Bruce Company did not go into the manufacture of the blocks invented by Rhinevault because it felt that it could possibly manufacture its own block more economically, the question of obtaining new machinery for making the new blocks on a commercial basis and the expenses thereof also being a consideration; that the Bruce Company had first thought that the application for patent should be filed in the name of one Allen, who was an employee of the Bruce Company; that an application for a patent was prepared and sent, for execution, to the Bruce Company on April 24, 1928; that it was found necessary to consult with one Dodge of the Woods Machine Company as to who was to be regarded as the inventor; that for a considerable period of time Dodge was ill and away from his business. Considerable correspondence was introduced into the record to show that for many months the Bruce Company tried to ascertain in .whose name the application for patent should be filed. It was finally determined to file it in the name of Rhinevault.

We agree with the finding of the Board of Appeals that the wooden block which forms the subject-matter of this interference belongs to that type of article which needs no further test than can be given to it manually and by inspection, and that when Rhinevault completed his block and tested it in the manner described, he had completed his invention. It is admitted by all that if Rhinevault is accorded a date in the summer of 1927 as his date for reduction to practice, he is the first inventor in fact.

■ We do not think the facts in the case afford any basis for the application of the doctrine of estoppel or the doctrine akin to estoppel laid down in Mason v. Hepburn, supra. As will be shown by the citations hereinafter made, this question has been so thoroughly discussed recently by this court as to require no extended discussion here.

The Court of Appeals of the District of Columbia, which decided the Mason v. Hepburn Case, followed it in a number of cases thereafter, but always declined to extend or amplify the doctrine therein laid down.

In Lederer v. Walker, 39 App. D. C. 122, 125, the principle involved in Mason v. Hepburn was discussed in an opinion by Mr. Justice Shepard, who also delivered the opinion in the Mason v. Hepburn Case, and it was there said:

"* * * * This has become the settled doctrine of this court. Re Mower, 15 App. D. C. 144–154; Thomson v. Weston, 19 App. D. C. 373–379; Matthes v. Burt, 24 App. D. C. 265–270; Dieckmann v. Brune, 37 App. D. C. 399–408. See, also, Curtain Supply Co. v. National Lock Washer Co. [C. C.] 174 F. 45–47. In each of those cases there was a deliberate suppression of the invention for different periods, during which another independent inventor entered the field, and, reducing the invention diligently to practice, introduced it to the trade. The first inventor was in each instance stirred to activity by the knowledge of his rival's successful exploitation of the invention. * * *

"None of the cases cited support the doctrine that mere delay in applying for a patent, after actual reduction to practice, will necessarily subordinate the first inventor's right to one who, in the meantime, has applied for a patent for the same invention, though it may be a potent circumstance in determining whether the alleged reduction to practice had, in fact, been made. The right of the first inventor who has actually reduced to practice has always been respected where there is no doubt of actual reduction to practice, and consideration has always been given to the circumstances excusing the delay. * * * *"

The most recent expression of this court on the Mason v. Hepburn doctrine is contained in the cases of Severson v. Olson, 64 F. (2d) 694, 20 C. C. P. A. —— and Nystrom et al. v. Mancuso, 64 F.(2d) 698, 20 C. C. P. A. ——, both decided April 17, 1933.

· In Severson v. Olson, supra, the application of the doctrine of the Mason v. Hepburn Case, under proper circumstances, was approved. The first inventor there did little, if anything, after making his invention, for a period of about two years, during which time the second inventor conceived the invention, reduced it to practice, and filed his application before the first inventor filed, and gave it to the public. The activities of the

first inventor from the date of conception of his invention until the date of filing his application were held to indicate that there was no intent to conceal or suppress or abandon the invention, and that the mere lapse of time between the two dates afforded no basis for the application of the doctrine of Mason v. Hepburn. The importance of the first inventor being stirred into Patent Office activity by knowledge of the second inventor's acts was stressed, and the court said:

"In Miller v. Hayman, supra [18 C. C. P. A. (Patents) 848, 46 F.(2d) 188], we said substantially what had already been said in Westinghouse Electric & Mfg. Co. v. Formica Insulation Co. (C. C. A.) 288 F. 330, and elsewhere:

" 'We think it proper to state that, as estoppels preclude a party from showing the truth, they are not favored and should not be applied to any case where the facts do not clearly justify their application.'

"Whether the 'spurred into activity' consideration is or is not an essential factor of every case, we are not inclined to apply the doctrine of equitable estoppel unless this fact is present or unless the circumstances as a whole are equally persuasive of the inequitable position of the first inventor. In other words, we are not disposed to extend the doctrine or make more liberal application of it in interference cases than was made in Mason v. Hepburn, supra. On the contrary, we recognize the danger that might flow from its loose application, and that, unless great caution is observed, it might be gradually extended until its application resulted in far greater inequities than it was designed to cure. Only where such gross inequities clearly threaten to defeat the spirit and the purposes of the patent laws must it be given controlling effect.

"In the case at bar there is no showing of such abandonment, suppression, or concealment as warrants the application of the doctrine of estoppel to prevent the first inventor from obtaining priority."

■ In the board's opinion is the following statement: "That correspondence [Bruce's] is besides spread over a period of a year and a half, which period is regarded as not fairly warranted or excused under the circumstances." This and other statements by the board, and its conclusion in this case, as well as the argument of appellee in its brief, would seem to imply that it was necessary for the first inventor in an interference contest of this character to account for the period of time existing between the completion of his invention

and his filing of an application for patent as he would be required to do in showing diligence between the period of his conception and his reduction to practice. The law warrants no such requirement. It is too well settled in law to require extended citation that the intent to suppress, conceal, or abandon must be shown, and cannot be presumed from a mere lapse of time. Nystrom et al. v. Mancuso, supra.

■ Appellee has argued to the effect that the record facts above disclosed, should be held to show, under well-settled authorities, that what Rhinevault did amounted to nothing more than an abandoned experiment, and that it should not be held that he had reduced his invention to practice. If we were of the opinion that he had not reduced the invention to practice on the date claimed, or were in doubt on this question, this argument might be pertinent. There is a long line of cases which hold that where the question of reduction to practice is at issue and difficult of determination, conduct somewhat similar to that of appellant in this case will be regarded as indicative that there was no actual reduction to practice. But, since it is clear to us that Rhinevault reduced his invention to practice when he made the block and tested it, neither his subsequent conduct nor that of his assignee as shown in this record would afford sufficient grounds to warrant us in concluding that his early efforts in constructing and testing the block amounted only to an abandoned experiment. Hedenskoog v. Backus, 48 F. (2d) 408, 18 C. C. P. A. 1065, and cases cited therein.

■ In the case at bar we think there is nothing in the record to indicate that the first inventor suppressed, concealed, or abandoned his invention. The facts of record indicate the contrary. It is not shown that the first inventor was spurred into Patent Office activity by the actions of the second inventor. It is urged, on the one hand, that if the Bruce Company is the party in interest, it secreted the invention in a closet in the office of a vice president of the company, and, on the other hand, that if Rhinevault's conduct is to be looked to alone, he secreted one of the boards which he made and did nothing with it.

As we view it, the Bruce Company, although it put the board in a closet, showed no disposition to conceal the same from the public, but on the contrary evidenced an intention of securing a patent upon the same and in this way giving it to the public. There is no requirement in law that an inventor

must begin commercial production of his invention or file an application for patent within any specified time. If the Bruce Company were not the party in interest during the two year interval, and if the conduct of Rhinevault is to be judged, then it is clear that he disclosed his invention to the Bruce Company and did not conceal the same.

In the case of Nystrom et al. v. Mancuso, supra, referring to the Mason v. Hepburn doctrine, this court said:

"There is no statutory enactment to the effect that the mere lapse of two years from reduction to practice to application for patent shall constitute a bar to patent. Nor is there any authority, which has come to our notice, so holding. Certainly this court has never announced any such doctrine.

"The burden was upon the appellants to prove suppression and concealment during the said period of two years or more. MacLaren v. Stoetzel, 38 F.(2d) 125, 17 C. C. P. A. 857; Harlan v. Bregman et al., 39 F. (2d) 494, 17 C. C. P. A. 949.

"We are of opinion this burden has not been sustained. The appellee was neither concealing nor suppressing his invention. He had a full conception of its functions, and frequently tested its capacity and possibilities. All those who worked at his establishment were aware of these facts. These circumstances should be considered. Rolfe v. Kaisling, 32 App. D. C. 582. Every case of alleged concealment and suppression should be considered upon its own facts. Wietzel v. Lacy, 39 F.(2d) 672, 17 C. C. P. A. 943."

Since it is clear from the record that Rhinevault was the first inventor, in fact, and in a patent sense, priority in the interference proceeding should have been awarded to him. The decision of the Board of Appeals is reversed.

Reversed.